SOUTHWICK BIRDS AND ANIMALS, INC. *vs.* COUNTY COMMISSIONERS OF WORCESTER COUNTY.

Worcester. September 14, 1971. — September 30, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Dog. County Commissioners. Certiorari. Words*, "Suitable enclosed yards."

G.L. c. 140, § 161, imposes upon county commissioners as a duty and not as a matter of discretion an obligation to "decide" in the indicated circumstances the amount, if any, of just compensation to an owner of livestock or fowls for loss suffered from the worrying, maiming or killing thereof by dogs. [136]

The provision of G. L. c. 140, § 161A, prohibiting reimbursement by a county for damages by a dog to livestock or fowls unless they are "kept in proper houses or in suitable enclosed yards" applies only to the "wild" livestock or fowls specifically mentioned in § 161A and § 136A. [136–137]

The owner or "rare and exotic birds"which were kept on its premises "as a means of livelihood" and were killed by dogs from other premises was entitled to damages from the county under G. L. c. 140, § 161, even though the fence enclosing the pen in which the birds were kept was "not adequate"to keep out dogs. [137]

The return of county commissioners to a petition for a writ of certiorari to review a decision by them was inadequate, even as extended, to permit more than a determination that they had applied incorrect principles of law, and the judgement should be that their decision be quashed and that they reconsider the matter in accordance with proper principles. [138]

PETITION for a writ of certiorari filed in the Superior Court on May 23, 1969.

The case was heard by *Beaudreau*, J.

*James C. Donnelly*, for the respondents, submitted a brief.

*Jacob Oppewal* for the petitioner.

CUTTER, J. This petition for a writ of certiorari seeks review of the county commissioners' denial of damages to the petitioner corporation (Southwick) for attacks by dogs on its stock of "rare and exotic birds." The commissioners filed a return, later extended by court order. A Superior Court judge (on December 15, 1969, subject to the commissioners' exception) directed that the commissioners' disallowance of the claim be quashed and that the claim be allowed with interest. From a final judgment (entered February 27, 1970) the commissioners appeal. The facts stated in the commissioners' unduly abbreviated and uninformative return as extended [1] are summarized below.

Southwick maintained on its land in Mendon a collection

---

[1] Meager returns to petitions for certiorari are inappropriate in view of the present expanded scope of that remedy. G. L. c. 249, § 4 (as amended through St. 1963, c. 661, § 1). Requests for wholly adequate extension of returns should be granted liberally where that is desirable to make this common law remedy fair and less inadequate to accomplish justice in a modern context. See *Ferguson* v. *Civil Serv. Commn.* 344 Mass. 484, 486–487. See also Jaffe, Judicial Control of Administrative Action, 165–176; Davis, Administrative Law Treatise, §§ 24.02, 24.06 (also 1970 supp.).

of rare birds for exhibition and for sale to zoos and parks. They were enclosed in a pen about one-half acre in size fenced with twelve gauge fox wire, five feet high in some places and four feet high in others.

On March 28, 1967, a number of birds, kept by Southwick "as a means of livelihood," were killed by dogs. When notified by Southwick, police Sergeant Metcalf, Vernon Barrows (an animal inspector), and James Ferrucci (designated as the Mendon police officer to deal with dog losses[2]) went to the premises. On April 12, 1967, they appraised the damages at $4,627.50 and filed a certificate of their appraisal. The county commissioners denied a claim for this amount on April 29, 1969. This petition for a writ of certiorari was then filed on May 23, 1969. The commissioners' extended return set forth findings as indicated above, and added, "Inasmuch as the measures taken by . . . [Southwick] to enclose the yard in which the damaged fowls were kept were not adequate to protect the petitioner's property from such foreseeable perils as the . . . killing of said fowls by large dogs, it appears to the [c]ommissioners that the interests of justice require that the claim be denied." Also in an earlier paragraph of the return, the commissioners found that "[t]he fence was not adequate to hold out a large dog. An area of wire on a gate had been pushed in affording an opening through which large dogs could enter the enclosure. The fences were checked last before the date when the damage was sustained in September or October of 1966."

By the judgment now under review, Southwick was granted relief under G. L. c. 140, §§ 136A, 161, 161A, and 166 (which forbids one electing to proceed under § 161 to pursue alternative remedies). The sections relate to the recovery from the county of damage caused by dogs (off their owner s premises) to specified types of property.

---

[2] See G. L. c. 140, § 151 (as amended through St. 1956, c. 78, § 2), authorizing the selectmen to appoint a dog officer, who "shall . . . attend to all complaints or other matters pertaining to dogs in their respective towns." We interpret this as authorizing delegation to such officer by a selectman of his functions under c. 140, § 161 (see fn. 3, *infra*).

Pertinent portions of the first two of these sections are set out in the margin.[3]

1. The commissioners contend that the remedy under § 161 is discretionary and that, accordingly (cf. *Ames* v. *Attorney Gen.* 332 Mass. 246, 250–251), the commissioners' decision cannot be reviewed by certiorari. We interpret § 161 as intended to provide to owners of livestock specified in the section a definite remedy, not merely discretionary, for injuries described in the section, upon proof of the facts of particular injuries. The italicized language in the portion of § 161 (quoted following [C] in fn. 3 indicates the imposition of a duty to decide and not the grant of discretion. Nothing in *County of Worcester* v. *Ashworth*, 160 Mass. 186, 188–189, is inconsistent with our interpretation.

2. Section 161 provides a remedy for damage to "live stock or fowls." That term is defined in § 136A (see

---

[3] In the following quotations (emphasis supplied) letters in brackets have been inserted for convenient reference to the provisions following such letters respectively. For the purposes of specified portions of G. L. c. 140, including §§ 161 and 161A, the term "live stock or fowls" has been defined in § 136A (as amended through St. 1943, c. 111, § 1), as "[A] animals or fowls kept or propagated by the owner for food or as a means of livelihood; also [B] *deer, elk, cottontail rabbits and northern hares, pheasants, quail, partridge and other birds and quadrupeds determined by the department of conservation to be wild and kept by, or under a permit from, said department in proper houses or suitable enclosed yards.* Such phrase shall not include dogs, cats and other pets" (see italicized language in fn. 4, *infra*). Section 161 (as amended through St. 1934, c. 320, § 24) reads, "Whoever suffers loss by the worrying, maiming or killing of his live stock or fowls by dogs, outside the premises of the owners or keepers of such dogs . . . if the damage is done in a town, may inform the chairman of the selectmen of the town, or, if he is absent or ill, any one of the selectmen, who shall proceed to the premises where the damage was done and determine whether the same was inflicted by dogs, and if so, appraise the amount thereof. if it does not exceed fifty dollars. [C] If . . . the amount of said damage exceeds fifty dollars, the damage *shall* be appraised, on oath, by three persons, of whom one shall be such officer of police, chairman or selectman, one shall be appointed by the person alleged to be damaged, and the third shall be appointed by the other two. . . . The said officer of police, chairman or selectman *shall* return a certificate of the damages found . . . to the treasurer of the county . . . within ten days after such appraisal . . . . The treasurer *shall* . . . submit the same to the county commissioners, who . . . *shall* examine all bills for damages, and may . . . summon the appraisers and all parties interested and make such investigation as they may think proper, and *shall* issue an order upon the treasurer of the county for such amounts, if any, as they *decide* to be just and shall notify all interested parties of their decision. The treasurer . . . *shall* pay all orders drawn upon him in full, for the above purpose, and for the expenses of appraisal out of any money in the county treasury, and payments made therefor *shall* be charged to the dog fund. . . ."

fn. 3) as including "fowls kept . . . by the owner . . . as a means of livelihood." The dead birds were found by the commissioners to be so kept. The definition distinguishes such fowls (fn. 3 at point [A]) from certain other specified "wild" species (see fn. 3 at point [B]) to be "determined by the department of conservation . . . and kept . . . in . . . suitable enclosed yards." This language of § 136A (at point [B] of fn. 3) is closely similar to the language found in c. 140, § 161A,[4] which prohibits reimbursement for injury to specified "wild" species unless kept "in suitable enclosed yards." We interpret §161A as having no application to the first class described in § 136A, viz. "fowls kept . . . as a means of livelihood" (fn. 3 at point [A]) but as applying only to the "wild" livestock and fowls specifically mentioned in § 161A (and also in the portion of § 136A, quoted in fn. 3 after point [B]). Recovery thus is not precluded by the commissioners' finding that Southwick's measures "to enclose the yard . . . were not adequate to protect . . . [Southwick's] property from such foreseeable perils as the . . . killing of . . . fowls by large dogs" (see fn. 4). The provisions of § 161A concerning "houses or . . . enclosed yards," in our opinion, has not been applied by the Legislature to fowls kept "as a means of livelihood," in view of the separate treatment in § 136A of (1) fowls kept "as a means of livelihood," and (2) the specified "wild" livestock.

3. The commissioners, although they did not appeal from the "decree" of December 15, 1969, essentially an order for judgment (see *Reynolds* v. *Commissioner of Commerce &*

---

[4] Section 161A (inserted by St. 1934, c. 320, § 25) reads, in part (emphasis supplied): "No reimbursement shall be made on account of damages by a dog to *deer, elk, cottontail rabbits, northern hares, pheasants, quail, partridge and other live stock or fowls determined by the department of conservation to be wild unless they are kept by, or under permit from, said department, nor unless they shall be kept in proper houses or in suitable enclosed yards.* No reimbursement shall be made for damage by a dog to dogs, cats and other pets. Awards shall in no case exceed the fair cash market value of such live stock or fowls." In neither § 136A nor § 161A, is it at all clear that "suitable enclosed yards" means more than an enclosure sufficient to restrain the "wild" livestock from wandering from their premises. The language does not plainly require that it be sufficient to exclude large trespassing, marauding dogs. Section 166 gives the owner an election to proceed (made binding upon him by initiating proceedings) under § 161 or under alternative remedies.

*Dev.* 350 Mass. 193, 194, cert. den. 384 U. S. 1001), did seasonably appeal from the judgment entered by court order on February 27, 1970. See G. L. c. 213, § 1D, as amended by St. 1957, c. 155; Reed, Equity Pleading and Practice (1970 supp.) § 531, fns. 10, 11; Mottla, Civil Practice (3d ed.), § 1369, pp. 464–465. See also *Martin* v. *Aldermen of Newton*, 337 Mass. 544, 547–548; *Johnson* v. *District Atty. for the No. Dist.* 342 Mass. 212.

4. We view as inconsequential the easily corrected, and apparently inadvertent, failure of one appraiser to make oath to the appraisal accepted and used by the commissioners as one basis of a hearing under c. 140, § 161.

5. The commissioners' inadequate return, even as extended, affords insufficient basis for more than a determination that the commissioners applied incorrect principles of law. The judgment should have been merely (a) that the commissioners' denial of Southwick's claim be quashed and annulled, and (b) that the commissioners reconsider the claim in accordance with proper principles and preserve sufficient record of the evidence heretofore and hereafter introduced so that an adequately extended return (see fn. 1) may be made, in the event that the matter cannot be disposed of on the basis of the appraisal, and there is further occasion for any judicial review of their determination. The judgment is to be modified accordingly and, as so modified, is affirmed.

*So ordered.*