**Frank NEWBURGER, III, et al.,
Plaintiffs,**

**v.**

**Walter PETERSON, Governor of the
State of New Hampshire,
et al., Defendants.**

**Civ. A. No. 3483.**

United States District Court,
D. New Hampshire.

June 8, 1972.

Melvin L. Wulf, and Lawrence G. Sager, American Civil Liberties Union Foundation, New York City, David Woodbury, Devine, Millimet, Stahl & Branch, Manchester, N. H., for plaintiffs.

Donald A. Ingram, Asst. Atty. Gen., State of New Hampshire, Concord, N. H., for defendants.

Before COFFIN, Circuit Judge, and GIGNOUX and BOWNES, District Judges.

## OPINION

COFFIN, Circuit Judge.

This case presents a challenge to the constitutionality of New Hampshire's law disqualifying a citizen from voting in a town if he has a firm intention of leaving that town at a fixed time in the future. The few facts are stipulated. Plaintiff, whose parents live in Hawaii, is a student at Dartmouth College who, solely because he stated to voter registration officials that he intended to leave Hanover upon his graduation in June of 1974, was denied registration. The present defendants are the registration officials of Hanover and the state's Attorney General. The pertinent New Hampshire statute, N.H.R.S.A. c. 54, § 1, does not on its face command the denial, specifying only that an inhabitant of a town shall have the right "to vote in the town in which he dwells and has his home." But it is also stipulated that New Hampshire's venerable common law of domicile, as embodied in State v. Daniels, 44 N.H. 383 (1862), is incorporated in the statute. This tradition views an intention to remain permanently or indefinitely in a particular town as essential to the acquisition of domicile.

Jurisdiction is properly asserted under, inter alia, 28 U.S.C. § 1343(3) for rights established by 42 U.S.C. §§ 1971, 1973 and 1983 and the Fourteenth and Twenty-Sixth Amendments. Declaratory and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff brings this action as a class suit, on behalf of all voting age students who wish to register in the communities where they reside while attending school but who intend to leave those communities upon graduation. At argument we provisionally recognized this class, and now do so finally. F.R.Civ.P. 23(b) (2). Although, as has been stipulated, the challenged actions of the defendants affect not only students but all who would be permitted to register but for their firm intention to leave at a fixed time, defendants have "acted or refused to act on grounds generally applicable to the class" of students intending to leave, F. R.Civ.P. 23(b) (2), making that requested class proper, even if not the most comprehensive.

While, so far as we know, there are no precedents on point, recent decisions have at least clarified our standard of review and have illuminated the ap-

plication of that standard. Ambiguities remain. As for the standard, Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) made clear the exacting test that must be applied to the review of state legislation denying the franchise to some otherwise qualified citizens. As quoted in Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1972), the test is "whether the exclusions [from the franchise] are *necessary* to promote a *compelling* state interest."[1]

Before we attempt to apply the test, however, we must inquire whether we are free to do so. Defendants argue, with some basis, that the test for bona fide residency of permanent or indefinite intention to remain in a community has already received acceptance by approving references in Carrington v. Rash, 380 U.S. 89, 94–95, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Evans v. Cornman, 398 U.S. 419, 421, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); and Dunn v. Blumstein, *supra*, 92 S.Ct. 1007 n. 22. While we realize that inferior courts do not lightly discount the literal meaning of passages in Court opinions, we are equally aware of the judicial mandate of construing words and phrases with some sensitivity to the point the Court was trying to make, what was before it and what was not before it, and its underlying concern. For reasons we shall set forth we think that the cited references do not place a binding imprimatur on the indefinite intention test for bona fide residence.

Plaintiff has perceptively observed that this is one of the first of the second generation of voting rights cases. The three cases we have cited were clearly of the first generation. The Court was concerned in each with grosser restrictions: in Carrington, with a conclusive presumption against servicemen; in Evans, with a similar exclusion of National Institutes of Health personnel; in Dunn, with a durational residency requirement. In each, many of the excluded class could, if individualized treatment had been available, have met the indefinite intention test. Referring to the latter was sufficient to indicate the arbitrariness of the added rule; the arbitrariness of the test itself was not in issue.

Wholly apart from the Court's major concern, we discern from a plurality of references that the Court did not intend any precision in its references to what might be reasonable requirements for bona fide residence. In Carrington the Court referred to "reasonable and adequate steps", 380 U.S. at 96 & n. 6, 85 S.Ct. 775, as embracing a possible distinction between servicemen living on a base and those who have acquired homes in the community, 380 U.S. at 93 n. 3, 85 S.Ct. 775—a property test surely now questionable in the light of Kramer, supra, 395 U.S. at 630, 89 S.Ct. 1886. Similarly, the opinion seemingly equated tests to determine "the bona fides of an individual claiming to have actually made his home in the State long enough to vote" with those to determine a "'freely exercised intention' of remaining within the State . . . ." 380 U.S. at 95, 85 S.Ct. at 779. In Evans, despite a passing nod to Carrington's reference to indefinite intention, 398 U.S. at 421, 90 S.Ct. 1752, the Court recognized that "whether appellees are sufficiently disinterested in electoral decisions that they may be denied the vote depends on their actual interest today, not on what it may be sometime in the future." 398 U.S. at 424, 90 S.Ct. at 1756. And in Dunn, while the Court seemingly approved individualized application of the Tennessee indefinite intention test, 92 S.Ct. at 1007 n. 22, it also apparently equated a declaration of intention to become a citizen of a state

---

1. As in *Dunn*, the right to travel offers another basis for the exacting test. If a durational residency requirement penalizes travel by exacting the price of keeping the franchise from those who have travelled recently, so does New Hampshire's "permanent intention to remain" requirement penalize those who now firmly intend to travel at a fixed future time.

with the concept of bona fide resident, 92 S.Ct. at 1000 n. 7 and 1004 n. 15.

We note also two other cases where the Court showed no disapproval of two apparently less restrictive methods of determining bona fide residency. The earliest, and, so far as was reported by the Court, the least restrictive form was that in Pope v. Williams, 193 U.S. 621, 622, 24 S.Ct. 573, 48 L.Ed. 817 (1904), where the Maryland law required a simple declaration of intent to become a citizen evidenced by registry in a book. This was conjoined with a requirement that entitlement to registration would occur one year after the intention was evidenced. While the Court in *Dunn* disagreed over the holding in *Pope*, there was no disagreement over the reasonableness of the declaration of citizenry requirement. In Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L. Ed.2d 50 (1965), the Court rejected the requirement that a voter for federal office be forced to choose between paying a poll tax and filing an annual certificate that he was a resident of a community in Virginia and that his present intention was not to leave before the next general election. 380 U.S. at 530, 85 S. Ct. 1177. The Court, while barring the compulsory option, specifically left open the question whether the state could abolish the poll tax and require all voters, state and federal, to file the annual certificate.

■ We conclude that the indefinite intention test has not been deliberately examined or foreclosed from examination. We therefore consider whether it is necessary to promote a compelling state interest. The justification, as concisely put by defendants, is that the state has a compelling interest in the promotion of a more intelligent vote, especially in small communities, by insuring that voters have a commitment to the community and a stake in the outcome of local elections. Such a vote and such a long-term commitment are belied, defendants argue, by a definite future intent to leave at a fixed time. We note that defendants do not rely on any state interest in preventing election frauds nor on any desire to prevent students from overwhelming a college community.[2]

We can do no better than track the inquiry in *Dunn*. This begins in conceptual and ends in pragmatic considerations. If the contention be that the requirement fosters "knowledgeable voters", this case presents a mirror image of the *Dunn* situation. In *Dunn*, the Court said that there was a confusion between the concept of a bona fide resident and that of a long-time resident. Here there is a parallel confusion between the concept of a bona fide resident and that of a permanent resident. Indeed, defendants' brief exposes their problem when it identifies two questions: (1) whether plaintiff is a resident and (2) whether he intends to remain a resident. The very separation assumes that one can be a resident without intending permanently to remain one.

*Dunn* next asks whether a "common interest" is sought to be insured by the requirement and disposes of the argument by saying that "local viewpoint" is not the desideratum, specifically denoting as an "impermissible purpose" the exclusion of college students who, on completion of their studies, "move on". 92 S.Ct. at 1010 & n. 28. To the extent that the concept of common interest means a sense of political community, and responsibility for long range decisions, the considerations which we discuss below are pertinent.

*Dunn's* third inquiry is directed to the achievement of a more intelligent vote. It concluded that, whatever be a state's power to bar less knowledgeable citizens from the franchise, such could not justify a durational residence requirement. 92 S.Ct. at 1010. So do we here conclude, on the same basis, that the New Hampshire indefinite intention require-

2. Such reliance was specifically rejected by the State upon inquiry from the court.

ment is too crude a blunderbuss to pass muster.

On the one hand, New Hampshire excludes from the franchise a student candid enough to say that he intends to move on after graduation, a newly-arrived executive with a firm intention to retire to his Florida cottage at age 65, a hospital intern or resident with a career plan that gives him two or three years in New Hampshire, a construction worker on a long but time-limited job, an industrial or government trainee working up a precise career ladder, a research contractor on a project with a deadline, a city manager hired for a term, a military person on a term of duty, a hospital patient with a hoped-for goal of discharge. On the other hand, those persons who are less precise in their planning or less confident that their plans will be realized at a time certain are allowed to vote. It is impossible for us to see how such people would possess any greater knowledge, intelligence, commitment, or responsibility than those with more precise time schedules.

Equally important, New Hampshire would give the franchise to a student born and raised in New Hampshire who planned to leave at graduation; to any resident who had accepted a job elsewhere; to a recent arrival who, the day after registering, accepted a job in another community; to one who had a firm intention to move away but at an uncertain time; to one with no plan at all but with a high statistical probability of moving. *See* Note, Student Voting and Apportionment: The "Rotten Boroughs" of Academia, 81 Yale L.J. 34, 57–58 (1971) (data on mobility).

In this day of widespread planning for change of scene and occupation we cannot see that a requirement of permanent or indefinite intention to stay in one place is relevant to responsible citizenship. Or, to state it legally, the state has not shown that the indefinite intention requirement is necessary to serve a compelling interest.

We are sensitive to the compelling need "to preserve the basic conception of a political community". Dunn v. Blumstein, *supra*, 92 S.Ct. at 1004. But the challenged New Hampshire law forces persons who are in every meaningful sense members of New Hampshire political communities to vote in communities elsewhere which they have long departed and with whose affairs they are no longer concerned, if indeed the former community still recognizes the right.

Perhaps in this field as in others a law giving complete assurance of preserving the "political community" concept is beyond aspiration. Whatever may be the outer limits of state power we are not called upon to say. But it is clear that there exist less restrictive alternatives to the requirement that one must say that he will always—or indefinitely—live in a particular town. We list several, without purporting to pass upon their constitutionality. These range from simple and objective requirements, such as Michigan's requirement that "a person habitually sleep[s] keep[s] his or her personal effects and [have] a regular place of lodging" in the place where he claims residence, Mich.Comp.Laws § 168.11(a); or a requirement that a person have a sufficient nexus with the community using some of the indices discussed by the Court in Evans v. Cornman, *supra*; to subjective and perhaps additional requirements that a person declare his intent to be a citizen of a community, *cf.* Pope v. Williams, *supra*, or that he declare annually his intent to remain a citizen until after the next election, Harman v. Forssenius, *supra*.

We therefore declare that the New Hampshire indefinite intention test offends the equal protection clause of the Fourteenth Amendment. Having full confidence that the state, which has been most cooperative in these proceedings, will take proper steps, we see no present need for an injunction.