LANNY J. HERSHKOFF vs. BOARD OF REGISTRARS OF
                VOTERS OF WORCESTER
              (and two companion cases[1]).

        Worcester.   September 19, 1974. — December 31, 1974.

    Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Certiorari. Practice, Civil,* Appeal. *Domicil. Elections. Words,*
    "Domicil," "Resided," "Inhabitant."

Where in a certiorari proceeding the question before the lower court was
    whether evidence before a board of registrars of voters was sufficient
    to warrant its denial of registration to three students, the lower court
    did not err in extending the returns of the board by admitting a
    stenographic transcript of the testimony given before it by the
    students [574]; nor did the lower court err in excluding evidence
    not presented before the board of an alleged board policy of dis-
    crimination against "non-native students" [574-575].
Where in a certiorari proceeding in the Superior Court the issue was
    whether the evidence before a board of registrars was sufficient to
    warrant its denial of registration to three students, this court based its
    decision on the reported evidence before the board rather than on the
    findings of the judge. [574]
A person 18 years old or older has the capacity to choose his domicil for
    voting purposes regardless of whether he is emancipated for other
    purposes. [577-578]
Financial support by parents or residence in a college dormitory does not
    automatically limit a young person's choice of domicil for voting
    purposes. [578]
A Worcester board of registrars of voters improperly denied registration
    to three students whose declarations that they resided in Worcester
    with intentions to make Worcester their home "for the time at least"
    were uncontested. [579-580]

PETITIONS for writs of certiorari filed in the Superior
Court on July 11, 1972.
    The cases were heard by *Tisdale,* J.

[1] The companion cases were brought by Geoffrey Steinberg and Richard
Brontoli.

*Henry P. Grady,* City Solicitor, for the Board of Registrars of Voters of Worcester.

*James E. Wallace* (*Mel L. Greenberg & James H. Barnhill* with him) for the plaintiffs.

BRAUCHER, J.   During October, 1971, and February, 1972, three students at colleges in Worcester sought to register to vote in Worcester. After hearings in March, 1972, the board of registrars of voters (board) denied the applications on the grounds that the domicils of two of the students were New York and that the domicil of the third was Pennsylvania. On petitions for writs of certiorari, a judge of the Superior Court ordered that the decisions be quashed and that the board be ordered to cause the students to be registered as voters in Worcester. We direct modification of the orders to provide for registration under the procedures currently in effect, and affirm the orders as so modified.

The board attached to its answers an "attested copy of transcript of record" of its meetings held on March 3 and 13, 1972. The so called "transcript" consists primarily of a purported summary of the sworn testimony of each student. The summary of each student's testimony is followed by a statement of a motion and a unanimous decision by the board. Thus Hershkoff's testimony is followed by a statement of a motion that "on the evidence presented by Mr. Hershkoff," he was domiciled in New York and "therefore should be refused registration in Worcester," and a statement that the board "unanimously agreed that his domicile was New York and that he be notified in writing, of the Board's decision."

The judge allowed motions to extend the board's returns by admitting in evidence, over the board's objections, stenographic transcripts of the testimony of the three students before the board. Over the students' objections, he excluded other extrinsic evidence. Since the students assert that the board's "transcript" is not an accurate reflection of what actually occurred, we summarize the stenographic transcript rather than the board's "transcript."

*Hershkoff.* Hershkoff at one time lived in Nassau County, New York. His family was "split up, basically." He leased an apartment in New York city in his own name. His father lived there on some occasions; his father worked on Long Island and came to visit during the weekend. Hershkoff left the country for six months, using a passport issued in New York, and registered for the draft in Bombay, India. After returning he was on vacation in California. In the fall of 1970 he registered as a student at Clark University in Worcester, using the address of the New York apartment. At the time of the board hearing in March, 1972, he was twenty years old and was still a student at Clark University, living in a dormitory there. His father was living in Nassau County, but Hershkoff had never lived at his father's current home and for more than two years had not been living in New York city. His tuition was being paid in major part by the university; his father was aiding in his support and claimed him as an exemption on his Federal income tax return. He had never registered to vote, had no driver's license, and no longer had a bank account, but had had a bank account in Worcester. He did not regard New York as his home; he considered Worcester his home, was active in a political campaign there, and hoped to run for public office there. He had no present intention of leaving Worcester; he planned on staying there at least one more year, probably longer.

*Steinberg.* Steinberg at one time lived in Pennsylvania with his parents. Beginning in September, 1969, he attended Clark University in Worcester. In December, 1970, he registered to vote in Norristown, Pennsylvania; he never voted there but did not request that his name be removed from the voting list. He registered for the draft through the Worcester office. At the time of the board hearing in March, 1972, he was twenty years old, was in his third college year, and was living in an apartment in Worcester. He had a Pennsylvania driver's license, but he had an automobile registered in Massachusetts. He had a bank account in Worcester and he, not his father, paid for his automobile insurance. His parents supplied part of the funds for his

education; he did not know whether his father claimed an exemption for him on Federal income tax returns. He considered Worcester, not Pennsylvania, his home, and intended to run for office in Worcester that year. He had no intention to return to his parents' home or to go to graduate school. His plans were to stay in Worcester, but his intentions as to employment on graduation had not crystallized.

*Brontoli.* Brontoli was born in New York city, and had lived with his family in various parts of the world. His parents were living overseas and had no permanent residence in the United States; they voted only in national elections, through arrangements made by his father's employer, a corporation with headquarters in New York city. He came to Worcester in September, 1969, to attend Worcester Polytechnic Institute. During vacations he visited his grandparents in Hunter, New York. At the time of the board hearing in March, 1972, he was twenty years old and lived in an apartment in Worcester. He paid for rent and food with money received from R. O. T. C. He owned a car bought in New York in the summer and insured and registered there; he also had a New York driver's license. After he was refused voter registration in Worcester, he tried to register in Hunter, New York, but could not because he had never lived there and did not intend to live there. His intention was to stay in Worcester until graduation in June, 1973; he would then go where the Army sent him for three or four years of military service. He considered Worcester his permanent residence, but did not have a present intention to remain there indefinitely.

After a hearing on September 14, 1972, the judge entered orders for judgment on September 29, 1972, that the board's decisions be quashed and that the board be ordered to cause the three students to be registered as voters. The board requested reports of material facts, and appealed. G. L. c. 213, § 1D, as amended by St. 1957, c. 155 (repealed effective July 1, 1974, by St. 1973, c. 1114, § 60). On May 29, 1973, the judge filed reports of material facts based on "the respondents' return and all of the evidence sub-

mitted at the hearing, including reasonable inferences drawn therefrom." The cases were consolidated for the purposes of appeal, and were transferred to this court pursuant to G. L. c. 211A, § 10 (A).

1. *Review procedure.*    Contrary to the board's contention, there was no error in extending the board's return to include the stenographic transcript. G. L. c. 249, § 4, as amended through St. 1963, c. 661, § 1.  G. L. c. 213, § 1A, as amended through St. 1962, c. 722, § 3. Rule 119 of the Superior Court (1954). See *Southwick Birds & Animals, Inc.* v. *County Commrs. of Worcester County,* 360 Mass. 133, 134, fn. 1 (1971). The question before the judge was whether the evidence before the board was as matter of law sufficient to warrant its decisions. The applicable standard is "substantial evidence," or "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Boston Edison Co.* ·v. *Selectmen of Concord,* 355 Mass. 79, 92 (1968). *Bunte* v. *Mayor of Boston,* 361 Mass. 71, 74 (1972).

Under G. L. c. 213, § 1D, as amended by St. 1957, c. 155, all questions of fact, law, and discretion which were open before the trial judge are open to us on appeal. *Ouellette* v. *Building Inspector of Quincy,* 362 Mass. 272, 273 (1972). The appeal is also subject to G. L. c. 214, §§ 19, 22-28 (repealed effective July 1, 1974, by St. 1973, c. 1114, § 62), relative to appeals in equity suits. Thus the practice in equity, including reports of evidence and of material facts, is made applicable. *Feener Business Schs. Inc.* v. *Board of Collegiate Authy.* 329 Mass. 170, 171-172 (1952). But where the issue is the sufficiency of the evidence before the board, findings of the judge which do not bear on that issue must be disregarded. Cf. *Loranger* v. *Martha's Vineyard Regional High Sch. Dist. Sch. Comm.* 338 Mass. 450, 453 (1959). Accordingly, we rest our decision on the reported evidence before the board rather than on the findings of the judge.

The students apparently sought to introduce evidence in the Superior Court, consisting of testimony of a member of

the board and one of its clerical assistants, to show that the board had policies and practices which discriminated against "non-native students." The record before us shows that the judge excluded extrinsic evidence other than the stenographic transcript of testimony before the board, but it does not include an offer of proof or other statements of the nature of the evidence. An affidavit of one of the students, executed after the board hearing and appended as an exhibit to his petition, asserts that when he attempted to register to vote a clerk stated, "We do not register students." Exclusion of such evidence, not presented at the board hearing, is supported by the *Loranger* case, *supra,* and cases cited. In view of our decision on other grounds, we do not pursue this point further.

2. *Domicil for voting purposes.* The Twenty-sixth Amendment to the Constitution of the United States, promulgated in July, 1971, provides, "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." Shortly after the ratification of that amendment, on July 21, 1971, the Attorney General of the Commonwealth rendered an opinion for the guidance of the local officials responsible for voter registration. Rep. A. G., Pub. Doc. No. 12 (1972) at 40. At that time the Constitution of the Commonwealth limited the right to vote to a citizen of "nineteen" or more years "who shall have resided within the town or district in which he may claim a right to vote, six calendar months next preceding any election . . .." Art. 3 of the Amendments, as amended by arts. 93 and 94, approved November 3, 1970. Further changes by arts. 95 and 100, approved November 7, 1972, included substitution of "eighteen" for "nineteen," but do not affect the present cases. Article 92 of the Amendments, approved November 3, 1970, provided for determining representative, senatorial, and councillor districts in terms of "inhabitants," and our Constitution defines "inhabitant" by providing that "every person shall

be considered as an inhabitant . . . in that town, district or
plantation where he dwelleth, or hath his home." Part II,
c. 1, § 2, art. 2, of the Constitution of Massachusetts. See
*Opinion of the Justices,* 365 Mass. 661, 663 (1974).

Provision was made by statute for voter registration by a
citizen "nineteen" years of age or older "who has resided in
the city or town where he claims the right to vote six months
last preceding a state, city or town election . . .." G. L. c. 51,
§ 1, as amended through St. 1971, c. 382, § 1. Subsequent
amendments changed "nineteen" to "eighteen" and elimi-
nated the six-month residency requirement, so that the
provision applies to a citizen "eighteen" years of age or
older "who is a resident in the city or town where he claims
the right to vote at the time he registers . . .." St. 1972, c. 28,
§ 1; c. 587, § 1. Durational residency was not considered by
the board in reaching its decisions. "All persons who are
citizens of the United States and who are domiciled in this
commonwealth are citizens thereof." G. L. (Ter. Ed.) c. 1,
§ 1.

The words "resided" and "inhabitant" in constitutional
and statutory provisions relating to voting have long been
construed to require that the voter have his "domicil" in
the appropriate city or town. *Putnam* v. *Johnson,* 10 Mass.
488, 501 (1813). *Opinion of the Justices,* 5 Met. 587, 588
(1843). See *Opinion of the Justices,* 365 Mass. 661, 663
(1974), and cases cited. "Both terms indicate the place of
one's home or dwelling place, which depends on the
common law doctrine of domicil." *Blanchard* v. *Stearns,* 5
Met. 298, 304 (1842).

Every person must have a domicil, and he can have only
one domicil at a time, at least for the same purpose. See
*Abington* v. *North Bridgewater,* 23 Pick. 170, 177 (1839);
*Opinion of the Justices,* 5 Met. 587, 589 (1843); Restate-
ment 2d: Conflict of Laws, § 11 (1971). "A person's domicil
is usually the place where he has his home." *Id.* at comment
a. "Home is the place where a person dwells and which is
the center of his domestic, social and civil life." *Id.* at § 12.
See *Mellon Natl. Bank & Trust Co.* v. *Commissioner of
Corps. & Taxn.* 327 Mass. 631, 638 (1951). A change of

domicil takes place when a person with capacity to change his domicil is physically present in a place and intends to make that place his home for the time at least; "the fact and intent must concur." *Opinion of the Justices,* 5 Met. 587, 589 (1843). Restatement 2d: Conflict of Laws, §§ 15-18 (1971). An unemancipated child, however, is generally said to lack capacity to acquire such a domicil of choice. *Id.* at § 22, comment a. Ordinarily, the domicil of a legitimate minor child has been held to be that of the father. *Glass* v. *Glass,* 260 Mass. 562, 564 (1927). *Green* v. *Green,* 351 Mass. 466, 467-468 (1966). But cf. *Kirkland* v. *Whately,* 4 Allen 462, 464 (1862). In most States emancipation is sufficiently shown if the minor, having attained years of discretion, maintains a separate way of life with his parents' consent. See Restatement 2d: Conflict of Laws, § 22, comment f (1971).

These cases present to us three problems with respect to the rules governing the domicil of a college student: (1) Does an unemancipated minor have capacity to acquire a domicil of choice for voting purposes? (2) How do family support and dormitory residence bear on the requisite intent? (3) What is the requisite intent with respect to the duration of the residence? As to the first, we have little difficulty. It seems to us, as it seemed to the Attorney General, that it is a corollary of eighteen-year old voting that the young voter is to be independent for voting purposes and therefore must have capacity to choose his domicil for voting purposes, regardless of his emancipation for other purposes. See Rep. A. G., Pub. Doc. No. 12 (1972) at 41-42. When women were enfranchised, attempts to make married women vote where their husbands voted were promptly overruled by statute. See St. 1922, c. 305; 1922 House Doc. No. 1225; *Green* v. *Commissioner of Corps. & Taxn.* 364 Mass. 389, 393 (1973). Compare Rep. A. G., Pub. Doc. No. 12 (1963) 81, with G. L. c. 51, § 1, as amended by St. 1966, c. 109. The future significance of this point may be reduced by St. 1973, c. 925, effective January 1, 1974, giving persons eighteen years of age full adult status for many purposes. See Hamann, Eighteen:

The New Age of Majority in Massachusetts, 59 Mass. L. Q. 17, 23 (1974). But we think that, apart from that statute, capacity to change domicil for voting purposes is implicit in eligibility to vote. *Jolicoeur* v. *Mihaly,* 5 Cal. 3d 565, 579-582 (1971).

By parity of reasoning, we do not believe that support by parents or dormitory residence can be given effect to limit the young voter's freedom of choice of domicil, and to that extent we depart from the views expressed in *Opinion of the Justices,* 5 Met. 587, 589-590 (1843). Although such facts have some logical relevance to the requisite intention, they do not control it. Even in the absence of parental support and dormitory residence, we do not think that young people who leave home to go to college are automatically barred from voting in their home cities and towns; nor can they be automatically removed from voting lists there. See *Ramey* v. *Rockefeller,* 348 F. Supp. 780, 786 (E. D. N. Y. 1972). On the other hand, they are free to establish new homes in college dormitories. Such a decision may be very foolish, for a formal declaration of change of domicil may well have a variety of consequences, some of which are not desired. But freedom to choose is freedom to choose foolishly. If they choose to establish new homes at college, we do not think a showing of parental support or dormitory residence in-validates the choice, at least for voting purposes.

As to the intended duration of residence, we have often said that domicil is the place of one's actual residence "with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode." See *Opinion of the Justices,* 365 Mass. 661, 663 (1974), and cases cited. "Expressions such as these should not be taken literally." Restatement 2d: Conflict of Laws, § 18, comment c (1971). See *Newburger* v. *Peterson,* 344 F. Supp. 559, 561 (D. N. H. 1972). The requisite intention is to make the place one's home for the time at least. If young people have such an intention, even if they intend to move later on, nevertheless "they have their home in their chosen abode while they remain." *Putnam* v. *Johnson,* 10 Mass.

488, 501 (1813). If a college student otherwise qualifies as a voter in a college town, he is not to be rejected because he is committed to a period of military service immediately following graduation. See Restatement 2d: Conflict of Laws, § 18, comment b (1971); *Newburger* v. *Peterson,* 344 F. Supp. 559, 563 (D. N. H. 1972); *Ramey* v. *Rockefeller,* 348 F. Supp. 780, 788-790 (E. D. N. Y. 1972).

3. *Proof of domicil.* The statutes in force in 1972 required that an unregistered voter, in order to be registered, "apply in person to the registrars and prove that he is qualified." G. L. c. 51, § 42, as amended through St. 1972, c. 28, § 2. The registrars were authorized to receive applications for registration and to "examine on oath such applicants and witnesses." G. L. c. 51, § 33, as appearing in St. 1962, c. 437, § 12. They were required to record the name of the voter, his age or date of birth, place of birth, residence on the preceding January 1 or at the later time when he became an inhabitant of the city or town, the date of registration and his residence on that date, his occupation and the place thereof, and any other particulars necessary to identify him fully. G. L. c. 51, § 36, as appearing in St. 1971, c. 932. We think they were entitled to inquire into these matters, and perhaps others. It was entirely proper in the present cases, for example, to inquire about parents' residences, drivers' licenses, automobile registrations, prior voting registrations, past and current addresses, and future plans. Cf. *Whatley* v. *Clark,* 482 F. 2d 1230, 1233, fn. 6 (5th Cir. 1973), cert. den. sub nom. *White* v. *Whatley,* 415 U. S. 934 (1974); *Ballas* v. *Symm,* 494 F. 2d 1167, 1171 (5th Cir. 1974); *Bright* v. *Baesler,* 336 F. Supp. 527, 534 (E. D. Ky. 1971); *McCoy* v. *McLeroy,* 348 F. Supp. 1034, 1037-1038 (M. D. Ga. 1972). There would have been no impropriety in an inquiry whether the applicant had considered the implications of a home in Worcester with respect to his taxes and automobile insurance.

On the other hand, it was no part of the duty of registrars to hold down the number of registered voters in Worcester, to create hurdles to test new voters, or, in the absence of any

ground for suspicion, to cross-examine applicants generally to test their credibility. Nor do we think registrars in Worcester or elsewhere took any such view of their functions, except perhaps with respect to students. Cf. *Bright* v. *Baesler,* 336 F. Supp. 527, 532, fn. 4 (E. D. Ky. 1971). There is nothing in the record to indicate that they asked new nonstudent voters the amounts or sources of their incomes, how or by whom their bills were paid, or what they knew about their parents' income tax returns. See *Opinion of the Justices,* 5 Met. 587, 590-591 (1843). When a student of voting age declared that he intended to make Worcester his home, we do not think the registrars were required to take an adversary position as to his intention solely because he was a student.

The decisions of the board were rendered on the evidence presented by the students. On that evidence, each student actually resided in Worcester with intention to make Worcester his home for the time at least. In the absence of any issue of credibility, each was therefore domiciled in Worcester and was not disqualified from voting by reason of domicil elsewhere. See *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966). The board's decisions to the contrary do not disclose any disbelief of the students' testimony; the decisions were apparently based on a view of the law contrary to that of the Attorney General and contrary to that taken here. Cf. *Sloane* v. *Smith,* 351 F. Supp. 1299, 1303 (M. D. Pa. 1972). The decisions were erroneous, and the judge properly ordered them quashed.

4. *Constitutional questions.* We do not decide any constitutional question. Cf. *Reed* v. *Election Commrs. of Cambridge,* 459 F. 2d 121, 124 (1st Cir. 1972). The students contend that the decisions of the board deny them equal protection of the laws. Cf. *Whatley* v. *Clark,* 482 F. 2d 1230 (5th Cir. 1973), cert. den. sub nom. *White* v. *Whatley,* 415 U. S. 934 (1974); *Ballas* v. *Symm,* 494 F. 2d 1167 (5th Cir. 1974); *Anderson* v. *Brown,* 332 F. Supp. 1195 (S. D. Ohio 1971); *Bright* v. *Baesler,* 336 F. Supp. 527 (E. D. Ky. 1971); *Newburger* v. *Peterson,* 344 F. Supp. 559 (D. N. H. 1972); *Ramey* v. *Rockefeller,* 348 F. Supp. 780 (E. D. N. Y. 1972);

*McCoy* v. *McLeroy,* 348 F. Supp. 1034 (M. D. Ga. 1972); *Sloane* v. *Smith,* 351 F. Supp. 1299 (M. D. Pa. 1972); *Jolicoeur* v. *Mihaly,* 5 Cal. 3d 565 (1971); *Wilkins* v. *Ann Arbor City Clerk,* 385 Mich. 670 (1971); *Worden* v. *Mercer County Bd. of Elections,* 61 N. J. 325 (1972); *Palla* v. *Suffolk County Bd. of Elections,* 31 N. Y. 2d 36 (1972); Guido, Student Voting and Residency Qualifications: The Aftermath of the Twenty-Sixth Amendment, 47 N. Y. U. L. Rev. 32 (1972); Note, 81 Yale L. J. 35 (1971). But in view of our decision as to domicil we need not pass on that contention.

5. *Disposition.*    One of the students sought to register to vote in Worcester more than three years ago, the other two almost three years ago. Their right to vote was upheld in the Superior Court more than two years ago, but proceedings under those decisions were automatically stayed by the entries of the board's appeals. G. L. c. 213, § 1D, as amended by St. 1957, c. 155. G. L. c. 214, § 19. The record before us does not show that interlocutory relief has been granted under G. L. c. 214, § 22. Moreover, the procedure for voter registration has been drastically revised by St. 1973, c. 1137, effective June 1, 1974. The students here may well have felt precluded by the pendency of these appeals from taking advantage of the new procedure, which is apparently designed to facilitate registration of students. On the other hand, it is entirely possible that the residences of one or more of the students have changed in the last two years.

Registration to vote is not a matter of discretion. In the circumstances before him, we think the judge could properly order the board to cause the students to be registered in Worcester. See *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966). In view of the lapse of time pending appeal, however, the orders are to be amended to provide for registration under the procedures currently in effect. As so amended, the orders for judgment are affirmed.

                                        *So ordered.*