Wilkins, Douglas H., J.
Plaintiff, John S. Ames, IV (“Plaintiff’), has moved for a preliminary injunction (“Motion”) against defendant, the Town of Wayland (“Town” or “Wayland”), requiring that the Town enroll his son, Nathaniel Ames (“Nathaniel”), in the 8th grade in the Wayland Public Schools. The Town has opposed the Motion. The court heard argument on August 12, 2014. Nathaniel’s mother, Lisa A. Mello (“Ms. Mello”)— who is also the Plaintiffs ex-wife — has filed an Emergency Motion for Leave to Intervene and was permitted to argue at least as amicus curiae in opposition to the Motion. After hearing the Motion is ALLOWED.
BACKGROUND
At this early stage, on a preliminary basis, the court finds that the Plaintiff is likely to prove the following facts. Nathaniel attended the Wayland Public Schools until the fourth grade, at which time he transferred to the Carroll School, a private school located in Lincoln and Waltham, Massachusetts, for remediation of issues related to his dyslexic learning style. His parents both lived in Wayland until they divorced in 2006. The Plaintiff continues to live in Wayland. Ms. Mello has moved to Framingham, where she currently resides.
In 2014, the mother’s and father’s parenting coordinator, Anne Cremonini, LICSW recommended to the Essex Probate and Family Court that it would be in Nathaniel’s best interest to return to the Wayland School System for the eighth grade. The father also engaged an expert, John D’Auria, Ed.D. to evaluate the optimal school placement for Nathaniel. Dr. D’Auria concluded that the optimal educational experience for Nathaniel would be to enroll him in a public school 8th grade setting in the Wayland Middle School, based upon Dr. D’Auria’s familiarity with the Town’s schools. He added: “Since Nathaniel originally attended Wayland Schools, this could also be an opportunity to re-engage with friends and peers before heading off to high school.”
After hearing on June 19, 2014, Justice Kaplan of the Essex Probate and Family Court entered the following order (Mello v. Ames, ES04D-1592-DV1):
This matter came before the Court on the Father’s Motion for Temporary Orders seeking implementation of the recommendations of the Parenting Coordinator. After hearing, the Father’s Motion is ALLOWED. It is, therefore ORDERED:
1. Nathaniel Ames shall be enrolled in the Wayland Public School system pending further order of this court.
2. Pursuant to the parties’ Separation Agreement and Judgment of Divorce, the parties share legal custody of Nathaniel, and each party enjoys physical custody during their parenting time. The Father resides in Wayland, Massachusetts, and Nathaniel Ames has an actual residence in Wayland with the Father, including an actual residence with the Father in Wayland for educational purposes in accordance with the Parties’ Separation Agreement, their Judgment of Divorce, and the Provisions of G.L.c. 76, §5.
*326 The Town, of course, was not a party to that proceeding and had no opportunity to be heard.
The Plaintiff contacted the Town in an attempt to enroll Nathaniel in the Wayland Public Schools. After a series of communications, an email from counsel for the Town of Wayland and the School District dated July 13, 2014 stated that the residency requirement for enrollment in Wayland was “not met.” The Town cited G.L.c. 76, §5 and pointed out that the Probate and Family Court cannot issue an order that contravenes the statutes.
The Town’s School Committee has adopted a policy on school admissions that lists grounds for denial of admission to school, including, among other things, “Not being a resident of the District (excluding the METCO program) and the District has opted not to participate in the School Choice Law.” Plaintiffs counsel sought further clarification of the Town’s policy through a public records request. On July 25, 2014, the Town responded with a number of responsive records, including a set of “Residency Guidelines” dated July 25, 2014 (the same day as the response). It does not appear that the pertinent provisions of these guidelines existed prior to the present dispute. The court accepts the suggestion of the Town’s counsel that these guidelines were an attempt to be transparent and helpful. They do, in fact, reflect the message previously conveyed by the Town to Plaintiffs counsel, because they set forth the following rule, which the parties have referred to as the “pillow count” rule:
In order to attend the Wayland Public Schools, a student must reside in Wayland, unless he or she is enrolled as a participant in the METCO program. A student is considered to reside in Wayland if he or she actually sleeps in Wayland in his or her parent/legal guardian’s home.
The following documents will be required as a proof of residency when new students are registered . . .
* * *
Cases of Separation or Divorce — Joint Physical Custody:
A copy of a court issued physical custody agreement. The student must reside in Wayland for at least three of the five weekly school nights (Sunday through Thursday nights).
Pursuant to the joint custody agreement in the divorce, Nathaniel spends 5 out of eveiy 14 days (3 out of 10 school days) with the Plaintiff and 9 out of 14 days (7 out of 10 school days) with his Mother.[1]
The verified complaint alleges that “. . . Wayland is a focal center of the Minor Child’s life. In addition to having previously attended school in Wayland, the Minor Child continues to have friends in Wayland and the Father’s parenting time has actually increased since the child was last enrolled in Wayland pursuant to the recommendations of the Father and Mother’s parenting coordinator.” While this is general, there is nothing in the record (other than the allocation of custodial time between the parents) to support a finding that Framingham is a focal point of the child’s social or academic life.
DISCUSSION
I.
A party seeking a preliminary injunction must prove a likelihood of success on the merits of the case and a balance of harm in its favor when considered in light of the likelihood of success. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). “(T]he apprehended danger” must be “so near as at least to be reasonably imminent.” Shaw v. Harding, 306 Mass. 441, 449-50 (1940).
II.
The Plaintiff has a likelihood of success on the merits. This case falls within the Court’s jurisdiction to render a declaratory judgment. Declaratory relief “may be used in the superior court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any municipal. . . agency or official which practices or procedures are alleged to be in violation of the . . . laws of the commonwealth . . . which violation has been consistently repeated ...” Villages Dev. Co. v. Secretary of the Executive Office of Envtl. Affairs, 410 Mass. 100, 106 (1991). The Plaintiffs claim that Wayland has consistently violated G.L.c. 76, §5 by denying Nathaniel’s right to attend school in Town meets that test. The claim also falls within this court’s general equity jurisdiction. G.L.c. 214, §1.
The case requires a determination whether the joint custody arrangement and other circumstances of this case establish that Nathaniel “actually resides” in Wayland within the meaning of G.L.c. 76, §5, which reads in relevant part:
Every person shall have a right to attend the public schools of the town where he actually resides, subject to the following section. No school committee is required to enroll a person who does not actually reside in the town unless said enrollment is authorized by law or by the school committee.
While joint custody arrangements are common, the parties present the issue in this case as one of first impression, and the court has found no case that governs.
The Plaintiff and Ms. Mello have shared physical custody of Nathaniel. “Shared physical custody contemplates that ‘a child shall have periods of residing with and being under the supervision of each parent ... assuming]... frequent and continued contact with both parents.’ G.L.c. 208, §31.” Mason v. Coleman, 447 Mass. 177, 182 (2006) (emphasis added). The natural, but perhaps simplistic, conclusion is that a child is “residing with” both parents and therefore is a resident of both towns where the parents live for purposes of *327 G.L.c. 76, §5. Such a construction would have the virtue of easy administration and predictability. It would also harmonize the shared custody statute with the education statutes, all of which aim to foster the interests of individual children. If this construction prevails, the plaintiff will win.[2]
Alternatively, G.L.c. 76, §5 may require identifying a single town of residence. The phrase “the town” can be construed to refer to a single town, even though the phrase “actually resides” does not. The cases under G.L.c. 76, §5 may suggest a more searching inquiry into a number of factors, including both the frequency of actual presence in one town or the other (e.g., a pillow count) and the principal location of the child’s domestic, social and civil life. See Teel v. Hamilton-Wenham Reg’l Sch. Dist., 13 Mass.App.Ct. 345, 348-49 (1982). Ding ex rel. Ding v. Payzant, 17 Mass. L. Rptr. 656, *8 (Mass.Super. May 20, 2004). Cf. Bd. of Educ. v. Sch. Comm. of Amesbury, 16 Mass.App.Ct. 508, 512 (1983). (The phrase “residing in" in G.L.c. 71B, §3 “is not so obviously self-defining when considerations such as split families, guardianships, children living with foster parents, relatives or friends, and institutionalized children enter the picture”).
Even if this more complex analysis applies, the Town’s pillow count policy fails to account for all the factors that determine whether a child is “actually residing in” Wayland. The Town essentially acknowledged as much, by taking a much more reasonable and appropriate position in its memorandum (at 9)[3] and at oral argument. In failing to consider matters such as the center of the child’s social life, the pillow count rule conflicts with cases like Ding; fails to account for the types of families mentioned in the above quote from Amesbury, 16 Mass.App.Ct. at 512 — who all share the characteristic that their children have a legitimate, non-fraudulent claim to residency; does not account for the dual residency that arises in a shared custody arrangement (as set forth in Coleman); and perhaps most fundamentally, fails to allow consideration of the child’s educational history and potential for re-establishing some continuity for a child with learning disabilities who re-enters the mainstream in his town. This last shortcoming is at least in some tension with the overriding purpose of the Commonwealth’s education laws to promote education of our children, in response to the mandate of Part II, c. 5, §2 of the Massachusetts Constitution. Cf. Hancock v. Commissioner of Education, 443 Mass. 428, 453 (2005) (plurality), citing McDuffy v. Secretary of the Executive Office of Education, 415 Mass. 545, 621 (1993).
As the Town ultimately acknowledges, the question is “which town is the center of Nathaniel’s domestic, social and civil life”? See also Martinez v. Superintendent of Sch. of Swampscott, 83 Mass.App.Ct. 1110, rev. den., 464 Mass. 1110 (2013). In this case, three key facts demonstrate the plaintiffs likelihood of success on that question. First, Nathaniel went to Way-land Public Schools through grade four. Second, he actually resides with his father in Wayland pursuant to an adjudicated joint custody arrangement. The fact that his nighttime presence in Wayland occurs less than 50% of the time does not change the fact that he does actually reside in Wayland (although he also resides in Framingham). Third, the record, though sparse, demonstrates a focal point of his social and civic life. At least, he has friends in Wayland and more than a small prospect of rekindling acquaintances and friends among his former classmates. This admittedly scant showing trumps the utter lack of a showing regarding any actual social and civic contacts in Framingham.
To counter these facts, the Town points out that Nathaniel has not attended school in Wayland since June 2011 and has attended school and school-sponsored activities in Waltham and Lincoln, spending time with peers from dozens of different surrounding towns. That appears to be true, but it is a red herring, since any choice here is between Wayland and Framingham, rather than any of the other surrounding towns. The Town offers no proof of a real connection with Framingham. Its factual argument boils down to showing that the child sleeps more at his mother’s house — which is closely analogous to the pillow count argument. The Town advances nothing beyond supposition to suggest that the center of the child’s social and civic life is Framingham.
III.
The balance of harms favors the Plaintiff. The school year is fast approaching. From an educational perspective, the best option for Nathaniel’s education is 8th grade in the Wayland Public Schools, as shown by the expert evaluations of both Dr. D’Auria and Anne Cremonini, LICSW. Loss of educational opportunity is serious. Cf. Hancock, supra. One benefit of mainstreaming in the 8th grade is to reintegrate into the system before the stresses of high school, and to re-establish or form friendships with his age peers that may serve him well in high school. Without an injunction, Nathaniel faces loss of that opportunity, which will never come again. Moreover, today is the day when the Plaintiff must commit to an alternative placement at Carroll School, which is the second choice, as ranked by the experts. The Plaintiff cannot sue the Town to repay that tuition, which may be irreparably lost.[4]
The Town’s alleged harms, on the other hand, all turn on the supposition that it will prevail on the merits. As noted above, the court does not make that supposition. If Nathaniel is a Wayland resident for purposes of §5, then the Town has no complaint if he exercises his statutory right to attend the Town’s schools. Nor does it have a complaint concerning payment for special education if he is in fact a resident.[5]
*328 The Town also raises the prospect of Nathaniel starting school in Wayland, only to be tossed out if it succeeds on its motion to dismiss. The court will await full briefing of the motion to dismiss before making any determination, but the Motion forces at least some evaluation of the prospects of dismissal. The Motion presumes that Nathaniel will seek special education services paid for by the Town. That presumption is speculative. The plaintiff has paid for private placements for the past several years without seeking reimbursement. See Dodyk Aff. ¶13. Even if he does seek special education services, he is entitled to do so if he is a resident. The Town appears on thin ice in suggesting that he must first go to the Board of Special Education Appeals to resolve the residency question. Not only does that ignore the Court’s power to enter injunctive relief to prevent irreparable harm pending resort to administrative remedies, but it suggests a proof-of-residency hurdle for students with actual or perceived disabilities that does not exist for other students. The court believes that such a facially discriminatory proposition is not likely to succeed.
In any event, the court trusts that any modification to the preliminary injunction entered today will take account of the equities. Likewise, scheduling a final determination on the merits should take account of the school year. The court suggests scheduling a trial in this matter for late spring or early summer, perhaps as early as 2015, so that the parties can receive a final ruling from this court in time to make provision for the next school year. Upon request from any party, the court will select such a trial date forthwith.
ORDER
Until resolution of the case on the merits or further order of the court, the court PRELIMINARILY ENJOINS the Town of Wayland from refusing to enroll Nathaniel Ames in the Wayland Public School System on residency grounds.

He spends Thursday evening through Monday morning with his father every other week, and spends every Thursday evening through Friday morning with his Father on the off-week.

The Town’s contention that a child in a joint custody arrangement can only have one domicile for voting purposes (Hershkoff v. Bd. of Registrars of Voters of Worcester, 366 Mass. 570, 576 (1974)) is not persuasive in the context of educating children in joint custody arrangements, which raises different considerations. There is, for instance, no concept of joint custody in the voting context. Nor is there any real danger of enrollment in both towns of residence, unlike the possibility of voter fraud if one had the right to vote in two towns.

The Town’s memorandum states: “. . . the Court must enter into a factual inquiry and legal analysis of which town is the center of Nathaniel’s domestic, social and civil life.”

Because the record is thin on this point, the court makes clear that the educational harm alone outweighs any harm to the Town.

While these arguments would bear upon the Town’s irreparable harm if the Town were likely to succeed, the court stresses that it has ignored those portions of the Town’s submissions that may suggest that, on the merits, it should take actual or perceived special education status into account in determining residency. See, e.g.,Town Opposition at6fn.l, 12-13. Any such link has no place in analysis under §5.