**Debra Paige McCOY and John Lowry, Plaintiffs,**

v.

**Kay McLEROY, Individually and as Chief Registrar of Clarke County, et al., Defendants.**

**Civ. A. No. 821.**

United States District Court, M. D. Georgia, Athens Division.

Sept. 15, 1972.

**1036**

Lowry, Henritze & McCormack, Sandy McCormack, Athens, Ga., for plaintiffs.

J. Ray Nicholson, Athens, Ga., for defendants.

OWENS, District Judge:

Plaintiff students at the University of Georgia, Athens, Georgia, complain by class action that they and others similarly situated, all of whom profess to reside in Clarke County, Georgia, and to be eligible to register to vote in said county, are being treated discriminatorily different [1] by the Board of Registrars [2] of Clarke County, Georgia, than others not similarly situated who seek to register to vote. Deprivation of Fourteenth Amendment equal protection and Twenty-sixth Amendment voting constitutional rights is alleged, and redress is sought under 42 U.S.C.A. § 1983.[3]

Plaintiffs' prayer for a preliminary injunction was heard by the court on Tuesday, September 5, 1972. Evidence was presented by the Plaintiffs and the Defendants. At the conclusion of the evidence and after hearing from counsel for the parties, the Court announced from the bench that the preliminary injunction sought by the plaintiffs was denied. This is to confirm and give reasons for that denial.

The facts as found by the Court show that the registrar's office in Clarke County, Georgia, is usually staffed by one person whose title is Chief Registrar. During the preceding approximately eight and one-half years two women have held this position, and they both testified. The Chief Registrar interviews those who desire to register to vote, usually asking the questions set forth in Georgia Code Annotat-

1. The complaint alleges: "The information elicited from members of Plaintiffs' class to register, as set out above, shows that the standards applied to students for determining residency·differ from standards applied to persons other than students, depriving members of this class of equal protection of the laws as guaranteed by the fourteenth amendment.

   "The information elicited from members of Plaintiffs' class regarding registration of automobiles and possession of a Georgia driver's license discriminates on the basis of wealth against these persons who cannot afford an automobile, denying these persons the fundamental right to vote without a compelling state interest.

   "The information elicited from members of Plaintiffs' class shows that the standards used for determining residency are other than the constitutional test of domicile, which is whether the applicant entered the State with intention to reside there for an indefinite length of time. Use of a different standard deprives members of the class of both the right to vote and the right to move freely from state to state as there rights are guaranteed by the United States Constitution.

   "That the standards employed and applied by Defendants with regard to students have been applied arbitrarily and capriciously by Defendants so as to deny Plaintiffs and members of their class due process and equal protection of the laws

   as guaranteed by the fourteenth amendment."

2. Georgia law provides that the judge of the superior court, Georgia's trial court of general jurisdiction, shall appoint quadrennially, upon the recommendation of the county grand jury, three electors as county registrars designating one as chief registrar. Persons desiring to register to vote apply to a registrar or deputy registrar who may grant the application. Ga.Code Ann. §§ 34–601 to 34–614; Ga. Laws 1964 Extra Sess. p. 26 et seq.; 1968 p. 871 et seq. The decision to deny the right of registration, though initially made by a registrar or deputy registrar, is to be finally made by the three registrars, and from their decision an appeal lies to the superior court. All that is required is for the appeal "[to] be filed in writing with the board of registrars within 10 days from the date of the decision complained of. . . . " Ga.Code Ann. § 34–615, Ga.Laws 1964 Extra Sess. pp. 26, 56.

3. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

ed 34–609,[4] Ga.Laws 1964 Extra Session, pp. 26, 50; Ga.Laws 1969, p. 285; and other questions [5] such as what is your residence address, how long have you lived in the county and where are you employed, designed to give the questioner a preliminary indication of whether or not the applicant is qualified to regis-

ter. If it appears that the applicant may not be qualified, the questioner generally asks further questions such as do you have a Georgia driver's license; [6] if you drive a car, does it have a Georgia tag [7] and if it does, was it obtained in Clarke County? [8] When the applicant is a student, questions peculiarly

4. "(a) The registration cards, for use by persons other than absentee applicants, shall be in substantially the following form and contain all the following, *but the registrars may require additional information and provide for its inclusion on the card.* The form may be printed on cards or separate sheets of paper, but, for convenience, the card, or sheet or sheets of paper, shall be referred to as the 'registration card'." § 34–609 (emphasis added).

5. Applicants are required by Georgia law "to disclose information sought by a direct question of the registration officers in connection with the taking of the application or at subsequent proceedings. . . ." Ga.Code Ann. 34–614; Ga.Laws 1964 Extra Sess. pp. 26, 56.

6. The public safety laws of Georgia are applicable to all except the following persons who are exempt: "(1) Any person operating a motor vehicle in the service of the Army, Navy, or Marine Corps of the United States. (2) Any person driving or operating a farm tractor or implement, temporarily operated or moved on the highway and not used for the purpose of hauling farm product to market. (3) A nonresident of the State at least 16 years of age and who is the holder and possessor of a valid operator's or public chauffeur's license issued by the State of his domicile. (4) A nonresident who is at least 18 years of age whose home State or Country does not require a license for operators of a motor vehicle, may operate a motor vehicle in passing through this State. (Acts 1937, pp. 322, 342; 1939, pp. 135, 140.)" Ga.Code Ann. § 92A–402, Georgia Laws 1937, pp. 322, 342; 1939, pp. 135, 140, and further provide that: "No person shall operate a motor-propelled vehicle engaged in hauling persons or property for hire nor a school bus upon the public roads or highways within this State or upon the public streets of any incorporated village, town or city as a chauffeur without first obtaining a license under the provisions of this Chapter and the rules and regulations promulgated by the Director of the Department of Public Safety." Ga.Code Ann. 92A–411; Georgia Laws 1937, pp. 322,

345; 1943 pp. 196, 201; 1963, p. 498. It seems to this Court that a person possessing other than a Georgia driver's license who drives a motor vehicle in the State of Georgia without obtaining a Georgia driver's license has declared himself to be a person within one of the aforesaid four exemptions. Since university students generally are not encompassed by 92A–402(1) or (2), it is apparent that students driving with out of state drivers' licenses can only fall within (3) or (4) and thus by their own declaration be nonresidents of the State of Georgia.

7. The laws of the State of Georgia require all motor vehicles owned by residents to be licensed by the State of Georgia. Ga.Code Ann. 68–201 et seq.; Georgia Laws 1927, pp. 226, 228; 1931, pp 7, 34, 213, 214; 1943, pp. 341, 342; 1953, pp. 392, 393; 1957, p. 590; 1959, p. 351; 1960, p. 777; 1966, p. 252. "Motor vehicles owned by nonresidents of the State may be used and operated on the public streets and highways for a period of 30 days without having to register and obtain a license to do so . . . Provided, no resident shall be allowed to operate a motor vehicle within this State under a license issued by another State." Ga.Code Ann. 68–221; Ga.Laws 1927, pp. 226, 235.
Since residents of Georgia are prohibited from operating out of state licensed motor vehicles in Georgia, it seems to this court that a person who regularly drives an out of state licensed motor vehicle in Georgia has already determined and is evidencing his determination that he is not a resident of Georgia.

8. Motor vehicle licenses or tags are issued by the State of Georgia in the county of the owner's residence. At the time of issuance the owner is required to pay all ad valorem taxes due the State of Georgia, that county and the city of his residence. Ga.Code Ann. 68–244 et seq.; Ga.Laws 1966, p. 508 et seq. In this court's opinion the purchase by a Georgia resident of an automobile tag in a Georgia county other than the county in which he seeks to register to vote, is also a declaration of residence in a particular county of this state.

applicable just to students such as, "do you pay out of state tuition?" and, "where do you spend the summers?" are also sometimes asked. When such questions are asked, the students response is not necessarily determinative [9] of his right to register. The registrar considers the overall picture. There is no list of questions that are asked; the same questions are not asked of every person; the questions are propounded to each individual in accordance with the circumstances of his particular situation. Questioning is not confined to those who are students at the University of Georgia or to any other identifiable group. Indeed, about 90 per cent of those who apply to register are asked questions other than those specified by law.

The evidence showed that University of Georgia students can and do register to vote in Clarke County, Georgia. Neither plaintiffs nor defendants produced any numerical figures, but Plaintiff Lowry when asked how many students known to him (a) were, and (b) were not permitted to register, stated that he knew about ten students who were permitted and about ten students who were not permitted to register.

An individual who is not allowed to register to vote by a single Clarke County registrar may appear before the entire Board of Registrars. Of the plaintiffs only one person asked to appear; that appearance resulted in an affirmance by the Board of Registrars and a further appeal is now pending in the Superior Court of Clarke County. Other than the plaintiffs, of the unknown total number of persons who have applied and been denied the right to register to vote in Clarke County, only eight or nine have asked to appear before the Board of Registrars. No other appeals to the Superior Court were brought to the court's attention.

The plaintiffs produced no evidence as to the policies of the Board of Registrars. In response to the court's question the person who was chief registrar for about eight years stated that the Board of Registrars had no particular policy as to students and to her knowledge had never even discussed having a particular policy as to students.

The circumstances of the three plaintiff witnesses were each different—one student still possessing a Virginia driver's license [10] said he had decided to live in Georgia—one student whose parents reside in another county in Georgia said that on week-ends and holidays when she leaves Athens she goes "home" to see her parents; she is registered to vote in that county but wants to transfer that privilege to Clarke County—another student was born in Georgia but thereafter on account of her father being in the armed forces has lived in many places. Her father presently is stationed in Virginia but is not registered to vote anywhere. She said that she has a Virginia driver's license,[11]—that Georgia is the place that she has chosen as a permanent residence and that she came to school in Athens because of having decided to reside in Georgia. Each of these persons after questioning was denied the right to register to vote.

To maintain a class action the plaintiffs are required by Rule 23(a) to show that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." The evidence did show that plaintiff students are two of at least 18,000 students at the University of Georgia. That any substantial number of those students con-

---

9. The chief registrar testified that the defendant registrars do not consider a determination by the University of Georgia that a student must pay out of state tuition, to be a determination of the student's residence for voting registration purposes. Plaintiffs do not contend otherwise.

10. See footnote 6, supra.

11. See footnote 6, supra.

sider themselves eligible to register to vote, or have attempted like individual plaintiffs to register and been refused, was not shown by the plaintiffs. Plaintiffs have thus failed to show the existence of a class and have failed to show the aforesaid four prerequisites. Since plaintiffs failed to comply with Rule 23 (a), it is unnecessary to determine whether or not Rule 23(b) is satisfied. In accordance with Rule 23(a), this court does hereby determine that this action is not to be maintained as a class action.

 The evidence produced so far in this case shows only that the individual registrar, in questioning these individual plaintiffs, asked them various questions for the sole purpose of determining whether or not each individual plaintiff is a bona fide resident of the County of Clarke and the State of Georgia, and qualified to register to vote in said county and state. These individual plaintiffs, in general, were not in any way treated differently from other persons who have sought to register and in particular were not singled out as students for any particular unusual treatment or for the application of any policies or procedures applicable just to students. As the Supreme Court of the United States has emphasized, the defendant registrars are "free to take reasonable and adequate steps, as have other States, to see that all applicants for the [right to register to] vote actually fulfill the requirements of bona fide residence. . . ." Carrington v. Rash, 380 U.S. 89, 96; 85 S.Ct. 775, 13 L.Ed. 2d 675, 680 (1965). Defendant registrars and Georgia ". . . have the power to require that voters be bona fide residents of the relevant political subdivision. . . ." Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L. Ed.2d 274 (1972). All of the steps taken by defendants were reasonable and adequate for these purposes and these purposes alone. Accordingly, the equal protection rights of these plaintiffs under the Constitution of the United States have not been violated.[12] See Bright v. Baesler, 336 F.Supp. 527 (E. D.Ky.1971). There is no evidence that unless enjoined defendants will violate plaintiffs constitutional rights. Plaintiffs are, therefore, not entitled to a preliminary injunction and it is denied.

It is hoped that the publication of this opinion will contribute to an understanding by these plaintiff students and others like them that they as students may decide to be bona fide residents of Athens and Clarke County and the State of Georgia, and to a further understanding that their decision to be residents carries with it all of the responsibilities imposed upon residents by Georgia law and all of the privileges granted residents by Georgia law, paramount among which is the right to register to vote.

---

12. Assuming arguendo that there was some evidence to support plaintiffs' constitutional contentions (this assumption in no way implies that there is any such evidence), this court would be bound by the decision of the United States Court of Appeals for the Fifth Circuit in Harris v. Samuels, 440 F.2d 748 (1971), which would require this court appropriately to retain jurisdiction but abstain while these plaintiffs proceed in the courts of the State of Georgia.