386 F.Supp. 890 (1974)
Samuel WRIGHT, Plaintiff,
v.
STONE CONTAINER CORPORATION, Defendant.
No. 74-42C(4).
United States District Court, E. D. Missouri, E. D.
December 20, 1974.
*891 Arnold T. Phillips, Clayton, Mo., for plaintiff.
Thomas M. Hanna, McMahon, Berger, Breckenridge & Hanna, St. Louis, Mo., for defendant.

OPINION
NANGLE, District Judge.
This action is before the Court following a trial to the Court sitting without a jury. This action was commenced on January 22, 1974, and is brought under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. C. § 2000e et seq., and pursuant to 28 U.S.C. § 1343(4) and 42 U.S.C. § 1981. It arises out of charges filed with the United States Equal Employment Opportunity Commission by the plaintiff, Samuel Wright, alleging discrimination in employment on account of race by defendant, Stone Container Corporation, who purportedly required plaintiff to perform the work of two corrugator operators and by refusing to hire minority members into the office force.
On March 17, 1972, Wright filed a sworn charge with the United States Equal Employment Opportunity Commission which alleged that he was assigned more difficult work and paid less than whites and that no Negroes were employed in the office. On December 7, 1972, Wright filed a perfected charge in which he alleged he was required to do the work of two corrugator operators following the retirement of a white corrugator operator and that no blacks were employed in the office.
Plaintiff originally brought this action on behalf of himself and all black *892 persons who are or have been or might be employed, refused employment, or otherwise adversely affected by the alleged unlawful employment practices of defendant.
On July 1, 1974, a hearing was held to determine whether the action should be maintained as a class action. The parties adduced testimony and subsequently submitted post-hearing memoranda. On July 30, 1974, after considering the evidence adduced at the hearing and the answers to interrogatories, it was ordered that this action would not proceed as a class action pursuant to Federal Rule of Civil Procedure 23, for the reason that no showing had been made of the specific claims of a sufficient number of those purported to be class members, as required by Federal Rule of Civil Procedure 23(a), (1)(2), and (3).
On August 30, 1974, plaintiff was granted leave to file an amendment to complaint adding sixteen present and former employees of Stone Container Corporation as parties plaintiff and adding certain allegations to the amended complaint.
On October 21, 1974, twelve of the plaintiffs added on August 30, 1974, were withdrawn as parties by their attorney.
On December 9, 1974, the allegations of the amended complaint relating to all plaintiffs other than Samuel Wright were withdrawn and trial was held in this action.
Being fully advised in the premises the Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT
1. Plaintiff Samuel Wright is a black citizen of the United States residing within the Eastern District of Missouri. Wright is an employee of defendant Stone Container Corporation at its St. Louis, Missouri, plant.
2. Defendant Stone Container Corporation is a corporation organized and existing under law and doing business in St. Louis, Missouri.
3. Plaintiff was first employed by Leonson Corrugated Box Company, St. Louis, Missouri, on March 28, 1960. After a period of time, he became an operator on one of three corrugators at Leonson's Gratiot Street Location.
4. In September, 1962, Leonson Corrugated Box Company sold its business to Stone Container Corporation, a separate corporate entity.
5. In 1966, defendant considered moving from Gratiot Street to a location in West St. Louis County but abandoned those plans in favor of moving to a plant located near the inner city of St. Louis.
6. At the new plant, a Langston Corrugator replaced the three smaller corrugators at the former plant. The most senior corrugator operator, a Caucasian, became the operator on the Langston Corrugator and plaintiff, the next senior operator, served as the double-backer and was referred to from time to time as both operator and/or double-backer. No claim has been made that this arrangement was racially discriminatory or in any way unlawful.
7. Persons employed in the corrugator department are promoted on a line-of-progression basis, moving from lower-rated jobs to higher-rated jobs, i.e., trucker to offbearer to lift truck operator to slitter man to double-backer to operator. The Corrugator Operator is the highest paid job classification in the production unit.
8. The employees in the production unit are represented by Local 409, Printing Specialties & Paper Products Union, who engages in collective bargaining on their behalf as required by the Labor Management Relations Act, as amended, 29 U.S.C. § 151 et seq. Local 409 is not a party to this action.
9. Plaintiff, at all material times, has been a member of Local 409. Plaintiff's wage rate, and the rate for all other production employees has been set *893 through the collective bargaining process and said process has not been attacked here. A substantial number of production employees have been Negroes and presently Negroes make up the majority of production employees. Negroes occupy positions as shop stewards and bargaining committee members. Members vote to accept or reject collective bargaining agreements.
10. On July 6, 1970, the Caucasian corrugator operator retired and he was replaced by plaintiff. Plaintiff alleged that he was required to perform more work than the retired operator because Ervin Love, a black lift truck operator, and Willie Rose, a black double-backer, refused to cooperate. However, the preponderance of the evidence discloses that plaintiff's duties were no different than those of any other corrugator operator, regardless of race. Furthermore, automatic roll stands have been installed in the past year which reduces the workload of both the corrugator operator and the double-backer.
11. Plaintiff, at least since July 1, 1970, has been paid an hourly wage rate in excess of that required by union contract.
12. Plaintiff could not establish whether or not he ever filed any grievances with Local 409 concerning his complaints in connection with the corrugator operation, even though he had filed grievances for other reasons, and Negro union stewards represented the corrugator department.
13. Plaintiff also contends that he was discriminatorily denied a position in the Maintenance Unit after applying for a position therein, first while the plant was owned by Leonson Corrugated Box, and later when the plant was operated by defendant. The Court finds that plaintiff made no such application.
14. Maintenance and Engineering employees are represented by the International Union of Operating Engineers, Local No. 2, and the truck drivers are represented by the International Brotherhood of Teamsters, Local 610. Both unions have collective bargaining agreements with the defendant and are not parties to this action.
15. Plaintiff did not advise defendant of any mechanical skill or ability he possessed at any time. Plaintiff's work has not been of such a nature as to demonstrate a very high degree of mechanical ability. Plaintiff's work as a corrugator operator was satisfactory. He had previously earned a wage bonus raising his salary rate above that required by the labor management for that position. Plaintiff's mechanical background was not equal or superior to any person hired into the Maintenance man job classification and was decidedly inferior to Cobb and Fitzgibbons, who were the Caucasians allegedly hired for the vacancies he sought to fill.
16. There has never been a black employed in the Maintenance Department or on the office force.
17. Plaintiff made no particular effort to advise defendant of his desire to leave one bargaining unit and work in another despite the high turnover rate of management during his employment career.
18. The number of maintenance men has progressed from one man in 1963 to the present level of six. As of March 29, 1974, there were approximately one hundred seven hourly employees of defendant in all three bargaining units.
19. Plaintiff has expressed no desire to work as a maintenance man should it require him to surrender his seniority in the unit represented by Local 409, and/or to begin at the bottom of the seniority list of employees represented by Local 2.
20. Wright has never applied for an office position and offered no proof that he was qualified in any respect for such work.
21. Both defendant and its predecessor, Leonson Corrugated Box, have had no policies, rules or restrictions which were racially discriminatory at any time. To the contrary, minority employees have had the freedom to work in all job classifications in any of the three bargaining units. Additionally, *894 Negroes have been employed as supervisors since before 1964 to the present, and promotion to supervisory ranks has been tendered to Negro employees, including plaintiff, who have declined the same.
22. Defendant is maintaining an affirmative action program designed to increase minority representation in all areas.
23. Defendant employs a high percentage of minority members in all hourly job classifications, and is expanding the number of Negroes in all other categories.

CONCLUSIONS OF LAW
The Court has subject matter jurisdiction of the action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 28 U.S.C. § 1343(4).
Samuel Wright filed a charge alleging unlawful discrimination because of race at defendant's St. Louis plant with the United States Equal Employment Opportunity Commission on or about March 17, 1972.
Samuel Wright failed to establish that he was discriminated against with respect to his alleged application for work as a maintenance man. He failed to prove that he applied for such position; that he was qualified for the job; that the defendant was seeking applicants; that Wright was rejected; and that after his rejection the position remained open and defendant continued to seek applicants from persons of plaintiff's qualifications. McDonnell-Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
This action having been filed on January 22, 1974, the Missouri five year statute of limitations would preclude recovery under 42 U.S.C. § 1981. See Mo. Ann.Stat. § 516.120(1); McDonnell-Douglas v. Green, supra, footnote 5; Green v. McDonnell-Douglas, 463 F.2d 337 (C.A. 8, 1972).
The Court finds that an award of attorney's fees would not be appropriate in this case.