**Samuel WRIGHT, Appellant,**

v.

**STONE CONTAINER CORP., Appellee.**

**Nos. 75–1094, 75–1120.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1975.

Decided Oct. 22, 1975.

Arnold T. Phillips, Jr., Clayton, Mo., for appellant.

Thomas Hanna, Clayton, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Samuel Wright, a black, filed this employment discrimination suit against Stone Container Corporation [hereinafter referred to as Stone] under the Civil Rights Act, 42 U.S.C. §§ 1981 and 2000e. He alleged racial discrimination in employment by reason of Stone's refusal to hire and promote minority persons into maintenance and office positions. He specifically alleged, *inter alia,* that he had been denied a promotion to Stone's maintenance department.[1] The suit was originally filed as a class action on behalf of all past and present employees of

Stone as well as future job applicants who might be adversely affected by the alleged unlawful discrimination. Stone counterclaimed for attorneys' fees.

After a pretrial class hearing, the district court denied certification of the suit as a class action. A trial was held on the merits after which the district court denied Wright individual relief, and refused to award attorneys' fees to the defendant.[2] Wright's § 1981 claim was held to be time barred by the appropriate Missouri five year statute of limitations and his § 2000e claim was denied because he failed to prove a prima facie case. Plaintiff appeals claiming that the district court erred by: 1) refusing to certify the suit as a class action; and 2) denying his individual claim under § 2000e. Stone cross appeals claiming that the district court erred in refusing to award attorneys' fees. We affirm.

A detailed description of the facts is contained in the district court's opinion. We outline only the essential facts here.

Stone manufactures corrugated boxes at its St. Louis, Missouri plant. Before 1962, the business was known as Leonson Box Board Company. Stone purchased the business in 1962.

Plaintiff Wright was hired by Leonson in 1960. He has been employed by Stone since the 1962 takeover in the company's production unit. Since 1970, plaintiff has been a corrugator operator and has been paid an hourly wage in excess of that required by union contract.

Stone's St. Louis plant is divided into three organized bargaining units and an unorganized office force. The production employees are represented by the Printing Specialties and Paper Products Union, Local 409, AFL–CIO. The maintenance and engineering employees are represented by the International Union of Operating Engineers, Local 2, AFL–

---

1. Wright also alleged that, because of Stone's discriminatory policy, he was required to perform more work than white workers in his position as corrugator operator. The district court's finding that this claim was wholly without merit is not challenged on this appeal.

2. The district court's opinion is reported at 386 F.Supp. 890 (E.D.Mo.1974).

CIO. The truck drivers are represented by the International Brotherhood of Teamsters, Local 610.

There are approximately 105 wage earning employees in the plant. Of these, approximately 65 to 70 are blacks. However all but two of the black employees work in the production unit. One black man is a truck driver and a black woman is employed in a clerical position. Other blacks have been employed in the past as truck drivers and another black was hired for office work but was discharged for failure to attend work. No blacks have ever been employed in the maintenance department.

By union agreement, seniority in the plant is on a departmental basis.[3] An employee transferred from one unit to another cannot carry his seniority with him. Stone relies on Local 2, as the exclusive bargaining representative for the maintenance unit to which Wright purportedly applied, to refer qualified employees for job vacancies. Plaintiff did not join the unions in this litigation however despite their involvement in creating employment policies at Stone. Defendant filed a motion to dismiss for failure to join the unions. The plaintiff openly opposed this motion and the motion was denied.

In district court, Wright attacked the segregated nature of Stone's office and maintenance units and sought class wide relief. He also sought individual relief claiming that he had twice orally applied for a maintenance job in 1962 or 1963 and again in 1965. He claimed he was refused on both occasions. The district court refused to certify the class and denied the individual claim.

## I. WRIGHT'S CLASS ACTION

The district court refused to certify the class because Wright made no showing "of the specific claims of a sufficient number of those purported to be class members, as required by Federal Rule of Civil Procedure 23(a), (1)(2), and (3)." *Wright v. Stone Container Corp.,* 386 F.Supp. 890, 892 (E.D.Mo.1974).

The trial court is, of necessity, clothed with a good deal of discretion in determining the appropriateness of a class action. *Arkansas Education Association v. Board of Education,* 446 F.2d 763, 765 (8th Cir. 1971). Each determination must be based on the facts and circumstances of each individual case, and must depend upon a careful balance between the convenience of maintaining a class action and the need to guarantee adequate representation to the class members. Therefore a class decision will be overturned only upon a showing that the trial court abused its discretion.

The class representative must initially meet four prerequisites in order to obtain certification of a class action. He must show that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The class representative must also meet one of the prerequisites of Rule 23(b) not pertinent to our discussion.

We are committed to the proposition that Rule 23 should be liberally con-

---

**3.** Seniority in the production unit is on a departmental and production unit basis. When layoffs become necessary, production employees exercise job preference within their production department provided they qualify by experience and ability and have greater departmental seniority than the employee whose job they claim. Employees who lose employment within their production depart-

ment are permitted to exercise their seniority in other production departments provided, again, that they can perform the job and have greater seniority than the employee whose job they claim. There is no right based on seniority to shift from the production unit to the maintenance or truck drivers units, or vice versa. Each unit maintains, pursuant to union contracts, its own seniority roster.

strued to effectuate the remedial policy of Title VII since the conduct therein proscribed is discrimination against a class characteristic. We have specifically held that a single charge of employment discrimination *may* serve as a basis for a full scale inquiry into the alleged unlawful practices of an employer. *Reed v. Arlington Hotel Co.,* 476 F.2d 721, 723 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 425 (8th Cir. 1970).

■ Under the peculiar circumstances of this case however, we cannot say that the trial court abused its discretion in refusing to certify the class under Rule 23(a). Except for two vague references at the class hearing, Wright could not identify any person who had been subjected to the same or similar discriminatory treatment as he allegedly suffered. He could only speculate that approximately two hundred past and present employees and job applicants were involved. The typicality requirement of Rule 23(a)(3) obligates the class representative to at least demonstrate that there are other members of the class who have similar grievances. *Green v. Missouri Pac. R.R.,* 62 F.R.D. 434, 436 (E.D.Mo.1973), *rev'd on other grounds,* 523 F.2d 1290 (8th Cir. 1975); *accord, Williams v. Matthews Co.,* 499 F.2d 819, 829 (8th Cir.), *cert. denied,* 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974). Wright failed in this regard.

■ We also doubt that plaintiff was an adequate class representative in the court below. He failed to join the unions as parties defendant despite the existence of agreements between labor and management which regulated seniority and made difficult the transfer from one plant unit to another. Wright sought to represent persons who could have been adversely affected by a change in labor's seniority and transfer rules but openly opposed joining the unions who were partly responsible for such policies.[4] We have heretofore stated that the unions should be joined in such litigation where their policies have contributed to the creation of suspect employment practices. *See Gilmore v. Kansas City Terminal Ry.,* 509 F.2d 48, 52–53 (8th Cir. 1975).

■ Furthermore, we would have doubts regarding the adequacy of plaintiff's class representation on any subsequent remand. The district court found as a matter of fact that Wright had not applied and was not qualified for the maintenance job. In view of our holding, discussed *infra,* that this determination is not clearly erroneous, we would be forced to foist upon the class a representative who would not himself be a member of the class. We feel this could be potentially unfair to the other members of the class, and could make a sham of any subsequent class action against Stone. We refuse to rely on this factor alone however.[5] We hold only that the

4. Wright's alleged oral applications were made for promotion to the maintenance department. The record is clear that the contract between Stone and Local 2, the maintenance and engineering employees' union, required the company to notify the union of any job opening in the maintenance department and afford the union an opportunity to recommend job applicants. The company followed this procedure because the union referred skilled workers. Furthermore, Wright expressed no desire to work in the·maintenance unit if it required giving up his seniority accumulated in the production unit. This would have been required by union contract however. Thus the union was at least partially responsible for the"lily white" composition of the maintenance department and should have been joined as a party defendant.

5. If this factor alone was urged as the basis for affirming the district court's class decision, we might be inclined to remand and allow the plaintiff to proceed as the class representative. *See Huff v. N. D. Cass Co.,* 485 F.2d 710, 714–715 (5th Cir. 1973) (en banc); *Wetzel v. Liberty Mutual Insurance,* 508 F.2d 239, 247 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). However since other grounds are urged for affirmance, we believe the plaintiff's nonmembership in the class he seeks to represent is a practical factor which we may consider in refusing to reverse the district court's determination. *Compare, Cox v. Babcock & Wilson Co.,* 471 F.2d 13, 15–16 (4th Cir. 1972); *Heard v. Mueller Co.,* 464 F.2d 190, 194 (6th Cir. 1972).

cumulative effect of this as well as other considerations hereinbefore described requires affirmance of the district court's class decision.[6]

## II. WRIGHT'S INDIVIDUAL ACTION

■ The district court found that Wright failed to prove: 1) that he applied for the position of maintenance man; 2) that he was qualified for the position of maintenance man; 3) that Stone was seeking job applicants at the time of Wright's alleged applications; 4) that Wright was rejected; 5) that the position remained open after Wright's alleged rejection; and 6) that Stone continued to seek applicants possessing qualifications similar to those of the plaintiff after his alleged rejection.

After careful review of the record, we hold that these findings are not clearly erroneous. The only evidence offered to support Wright's claim that he had applied and was qualified for the job was his own testimony.

It is apparent from the record that he suffered from a severe credibility problem. He admitted that he filed no written application for the position of maintenance mechanic. He had great difficulty identifying the years in which he tendered his alleged oral applications. Wright also admitted that he never filed a grievance with the union regarding his alleged rejection.

Furthermore, the clear weight of the evidence shows that Wright was never qualified to undertake the position of maintenance mechanic. Although the hiring criteria used by Stone were largely subjective, some past mechanical experience was required of applicants for maintenance mechanic positions. Wright's own version of his past mechanical experience was sketchy at best.

He presented no evidence that his qualifications were equal to or better than those of the individuals who were hired as maintenance mechanics in the years in question. His work at Stone as a corrugator operator did not require a high degree of mechanical ability.

■ *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), establishes the prima facie elements of a Title VII racial discrimination case. The complainant must establish:

> . . . (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824 (footnote omitted). Although the requirements of a prima facie case will vary from case to case, Wright's failure to apply and lack of qualifications for the job are clearly fatal to his complaint. The purpose of Title VII is to eliminate discrimination, not to saddle management with unqualified employees.

## III. ATTORNEYS' FEES

Defendant counterclaimed for attorneys' fees. The district court held that an award of attorneys' fees was inappropriate in this case. We agree.

■ An award of attorneys' fees in a Title VII action is a matter committed to the discretion of the trial court. 42 U.S.C. § 2000e–5(k); *Rogers v. International Paper Co.,* 510 F.2d 1340, 1357 (8th Cir. 1975), *petition for cert. filed,* 43 U.S.L.W. 3666 (U.S. May 17, 1975)(No.

---

**6.** This case is distinguishable from *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 428 (8th Cir. 1970), and *Reed v. Arlington Hotel Co.,* 476 F.2d 721, 723 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973). In *Parham* and *Reed,* the plaintiffs' actions were initially certified as class actions in the lower courts. Denial of representative status to the plaintiffs involved therein would have been a useless drain on judicial time and resources since the class machinery had been invoked from the initial stages of litigation.

74–1446). We refuse to disturb the trial court's discretion in this case. The plaintiff has presented a good faith claim. We agree with the plaintiff that an award of attorneys' fees to defendants in cases such as this would discourage future litigation under Title VII. This result would be clearly contrary to the intent of the Civil Rights Act.

Affirmed.