Mary LACY, Plaintiff,

v.

CHRYSLER CORPORATION, Defendant.

No. 74–643C(1).

United States District Court,
E. D. Missouri, E. D.

March 31, 1980.

Steven K. Brown, Clayton, Mo., for plaintiff.

Edwin D. Akers, Jr., and Charles A. Newman, of Thompson & Mitchell, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, Chief Judge.

This matter is before the Court for a decision on the merits following a two-day bench trial held December 20th and 21st, 1977. Plaintiff alleges that defendant Chrysler Corporation has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by recalling from lay off a white employee with less seniority than plaintiff, who was laid off at the same time as plaintiff, while refusing to recall plaintiff from lay off status because of her race, black.

After consideration of the testimony adduced at trial, the exhibits introduced in evidence, the briefs of the parties, and the applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law applicable as a finding of fact is adopted as such.

### FINDINGS OF FACT

1. Plaintiff is a black female citizen of the United States, who was hired by defendant Chrysler Corporation as a typist-clerk in its parts depot in Hazelwood, Missouri on November 2, 1970.

2. Defendant is a Delaware corporation with its principal place of business in Highland Park, Michigan. Defendant has authority to do and is doing business in the State of Missouri. Defendant's business activities concern the manufacture, assembly, distribution and sale of motor vehicles.

3. On September 3, 1970, plaintiff applied for a position with defendant and in her application for employment listed the position she was qualified for or interested in as: (1) keypunch; (2) typing; and (3) clerkical [sic]. Plaintiff's application disclosed that she had a high school education and vocational training and prior experience in the operation of keypunch machines.

4. Ruth J. Ellis is a white female, who was hired by Chrysler's parts depot in Hazelwood, Missouri, on January 26, 1971, as a switchboard operator-receptionist. Ellis' application for employment and accompanying resume disclosed that Ellis was interested in a PBX operator-receptionist position with defendant, that she had a high school education and one and one-half years of college education, and that she had prior PBX operator-receptionist employment experience.

5. Plaintiff was hired as a clerk-typist and teletype operator. Plaintiff's duties involved the payment of freight bills, i. e., totaling, verifying and photographing them and sending them to Detroit, and routing various payroll and teletype documents.

Plaintiff never performed any duties in connection with the switchboard at Chrysler, nor did plaintiff perform any duties as a receptionist. Prior to her employment with defendant, plaintiff had no switchboard training nor was she ever employed as a receptionist.

6. The job duties of a switchboard operator-receptionist include dealing with the public in person and by phone, and operating the switchboard. The switchboard operator at defendant's Hazelwood facility serves the parts depot, the regional sales office, the service department, the fleet office, and the training center. Many of the incoming calls received at the switchboard are from customers having problems with automobiles who are calling to complain of problems and request help from Chrysler with respect to service. Additionally, the switchboard operator-receptionist must handle all persons coming to the regional offices, direct them to the appropriate department or people, and act as a receptionist while they are in the lobby. Telephone traffic reports compiled during an April, 1971 survey indicate that the switchboard handled a total of eight thousand three hundred fifty two (8,352) incoming calls and during May, 1971, the switchboard handled eight thousand twenty six (8,026) incoming calls. The testimony adduced herein indicated that the switchboard operator-receptionist position required an individual with exceptional communicative skills. Defendant interviewed between one and two dozen individuals for the position and had never hired an inexperienced switchboard operator on a permanent basis. Defendant's PBX console was set up for switched-loop operation with a direct station selection capacity of two hundred stations. As a receptionist, the PBX operator-receptionist must greet every person entering the building, ask them to sign a register indicating the purpose of their visit, and then make the decision where to direct the visitor. The receptionist performs this function for defendant's entire Hazelwood facility.

7. Both plaintiff and Ruth Ellis were laid off by defendant on May 21, 1971, as a result of an austerity program initiated by defendant. The typist-clerk position was eliminated by defendant and the duties encompassed in that position were distributed throughout the office. Ruth Ellis' PBX console-receptionist duties were assumed by the relief operator and the back-up relief operator. After several weeks, it became apparent that the relief operator and temporary back-up relief operators could not keep up with their other work in addition to PBX duties. Anna Godnish, defendant's relief operator who had company seniority back to 1966 and had been relief operator at the Hazelwood facility since Fall of 1970, testified that the board was "very busy" and that though she had more seniority than Ruth Ellis, she never tried to "bump" her because the job was too nerve wracking. Additionally, Godnish testified that two temporary replacements lasted only a very short time, one perhaps a couple days, and the other lasted only about an hour before she went home crying. At some point around the beginning of June, 1971, Ellis was recalled by defendant to help out several days a week on the PBX console. Even this temporary help proved inadequate and when Anna Godnish asked to be relieved of the responsibility of the job, on June 7th, Ellis was reinstated full-time.

8. Plaintiff had more seniority than Ruth Ellis. The collective bargaining agreement in effect at the time between defendant Chrysler and the Automotive, Petroleum and Allied Industries Employees Union, Local 618 provided that:

> The principle of seniority shall be recognized in the laying off and rehiring of employees, insofar as it is consistent with the efficient operation of the shop.

Plaintiff and Ellis were both members of the union. Defendant's office manager and depot manager considered recalling plaintiff to handle the PBX operator-receptionist position in view of the fact that her seniority was greater than Ellis's, however, since plaintiff had not had prior training nor any previous employment experience in any position requiring direct dealing with the public either in person or by phone, it was decided that recall of plaintiff for the PBX operator-receptionist position would not be

consistent with efficient operation of the shop. Plaintiff admitted that she could not operate the switchboard without extensive training and refused to receive training on the switchboard in order to operate it on an emergency basis even though she was requested to do so by defendant's office manager. Indeed, when plaintiff learned that defendant had recalled Ellis temporarily plaintiff called defendant concerning her own recall. At that time, defendant's depot manager asked plaintiff if she could operate a switchboard, and plaintiff responded that she could not. Plaintiff's employment record with defendant indicates that her employees rating was "fair" on a standard of excellent, good, fair, poor, in the qualities of ability, conduct, performance, and attendance. Ellis' employment record indicates ratings of "good". Plaintiff makes much of the fact that Ellis was hired at an "inexperienced" wage rate under the collective bargaining agreement. However, it is entirely clear from the record that Ellis had long experience in dealing with the public in person and by phone, operating switchboards, and acting in a service capacity for a prior employer, Southwestern Bell Telephone Company.

9. Defendant offered plaintiff a job after her lay off. On June 11, 1971, plaintiff was offered a temporary call back including call back for Summer vacation replacement. Plaintiff refused this position and indicated she would not accept any temporary call back. On June 23, 1971, defendant wrote plaintiff asking her to contact defendant's office manager at her earliest convenience regarding possible reemployment. Again, plaintiff refused.

10. Defendant has never had an on-the-job training program for the PBX switchboard operator-receptionist position occupied by Ellis except that which is necessary to qualify an employee to fill the position on an emergency and short-term basis. Persons hired to perform this position on a permanent basis are required to be fully qualified and able to handle the job when they are hired.

11. Ruth Ellis has remained in the PBX operator-receptionist position since her recall on June 7, 1971.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties and has subject matter jurisdiction pursuant to 42 U.S.C., § 2000e–5(f)(3). Plaintiff Mary Lacy was an "employee" within the meaning of 42 U.S.C. § 2000e(f) and as a black person enjoys the protections afforded by 42 U.S.C. § 2000e–2(a)(1). Defendant Chrysler Corporation at all times relevant hereto was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

In a disparate treatment case, a Title VII plaintiff must show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Const. Co. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), citing *Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). In the opinion of this Court, plaintiff has not made out a prima facie showing of disparate treatment. Without regard to defendant's justifications for its employment decision, plaintiff has not shown that she was qualified to fill the position of switchboard operator-receptionist. Nor has she shown that defendant departed from any of its ordinary procedures with respect to affirmatively training plaintiff to handle the position. Obviously, job qualifications are inherent in the provision of the collective bargaining agreement requiring recall by date of seniority "insofar as it is consistent with the efficient operation of the shop." Plaintiff has not argued that the PBX operator-receptionist position was an entry level job, indeed the record belies such a notion. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Title VII is designed only to eliminate discrimination and not to require the hiring of unqualified personnel. *Griggs v. Duke Power Co.,* 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971); *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1063 (8th Cir. 1975).

Furthermore, defendant has carried its burden of producing evidence of the

absence of discriminatory motive for the treatment alleged herein, *See Board of Trustees v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), in that defendant recalled the only person who could perform the PBX operator-receptionist job who had any seniority at the time of the recall. Ellis was qualified, had performed the job satisfactorily in the past, had a higher employee performance evaluation, and was willing to accept temporary work. Additionally, the Court finds that defendant's subsequent offers of employment to plaintiff and the favorable service letter written by defendant on May 21, 1971, about plaintiff, further militate even against an inference of discriminatory animus.

Plaintiff has not shown that the justification articulated by defendant is merely a pretext for racial discrimination, *e. g., McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282, 96 S.Ct. 2574, 2579, 49 L.Ed.2d 493 (1976). Thus, as noted above, plaintiff has wholly failed in showing discriminatory motive on the part of defendant. *See Teamsters v. United States, supra,* 431 U.S. at 335, n.15, 97 S.Ct. at 1854, n.15.

Judgment will be entered for the defendant.