Shirley **BROWN** and Dorothy **Black**, et al., Appellees,

v.

**ECKERD DRUGS, INC.**, a corporation now merged with Jack Eckerd Corporation, etc., et al., Appellants.

No. 79–1821.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 11, 1980.

Decided Oct. 21, 1981.

Order Filed Dec. 16, 1981.

John O. Pollard, Charlotte, N.C. (Blakeney, Alexander & Machen, Charlotte, N.C., on brief), for appellants.

Michael A. Sheely, Charlotte, N.C. (Joyce M. Brooks, Charlotte, N.C., Shelly Blum, Raleigh, N.C., on brief), for appellees.

Before BUTZNER, RUSSELL and MURNAGHAN, Circuit Judges.

ORDER

The appellants' petition for rehearing and suggestion for rehearing en banc has been submitted to the court. A poll of the court was requested, and in the poll an evenly divided court voted to deny rehearing en banc.

The panel considered the petition for rehearing and is of the opinion that it should be denied.

It is ADJUDGED and ORDERED that the petition for rehearing and suggestion for rehearing en banc are denied.

Entered at the direction of Judge Murnaghan. Judge Russell, Judge Widener, Judge Hall, Judge Ervin and Judge Chapman would have granted rehearing.

DONALD RUSSELL, Circuit Judge, dissenting:

I dissent from the denial by an equally divided vote of the active Judges of rehear-

ing *en banc* in this case both with reference to the individual and the class claims. I shall state my reasons for dissenting with reference to both claims separately.

### Individual Claims

In making its findings in favor of the individual claimants in this case, the district court applied these standards or criteria:

1. The burden to rebut plaintiff's case shifted to the defendant when the plaintiff made out a *prima facie* case; and

2. To establish a defense to a claim of discrimination in a promotion or replacement decision, the employer must show that the promoted employee or the replacement was "as qualified as, or more qualified than" the claimant who was not promoted or replaced.

Both of those legal standards are obviously in error. The majority panel opinion in effect concedes this. So far as the first standard is concerned, the panel opinion says:

"The bald statement that Eckerd failed to rebut the *prima facie* case is difficult to reconcile with the evidence."

The majority panel opinion, 663 F.2d 1268, is more direct in its verdict on the second requirement imposed by the district court on the employer in this case. It said:

"Furthermore, the [district] court's *expressed requirement* that the defendant show Ms. Ivey's replacement was as qualified as, or more qualified than, Ms. Ivey does not follow *Burdine*." (Italics added)

Those erroneous standards definitely tainted the district court's findings of discrimination in these cases and compelled reversal in this case. The burden of proof imposed by the first erroneous standard has consistently been held to require reversal of a trial court's factual findings in a discrimination case. This is so because the determination of the party on whom the burden of persuasion rests is always important to the factual resolution in a case. No one can state, based on the district court's opinion, that this erroneous burden of proof standard, as applied in this case, was not decisive in the court's findings. The district court repeated throughout its opinion that, when the plaintiff made out a *prima facie* case, the burden to rebut that case shifted to the defendant. It would seem only reasonable to assume that the district court would not have declared this rule as to burden of proof, as it understood it, if it had not been using it as the basis for its review of the evidence. When a trial court thus errs in its application of the burden of proof, all the cases which I have seen assume *with one exception* that the trial court used that standard in reaching its factual findings and have reversed the trial court. *The one exception is the majority panel opinion in this case.* For a lucid statement contrary to the viewpoint in the majority panel opinion on this point, *see* Judge Friendly's opinion in *Ste. Marie v. Eastern R. Ass'n*, 650 F.2d 395, 398–99 (2d Cir. 1981). Moreover, it must be remembered that it was in part because it made the same error on burden of proof that the trial court was reversed by the Supreme Court in *Burdine*.

Even clearer is the prejudice from the second erroneous standard followed by the district court. The Supreme Court in *Burdine* said unequivocally that Eckerd, in order to defend against Ms. Ivey's claims, did not have to show that Ms. Ivey's replacement was as qualified or more qualified than Ms. Ivey. The district court in this case, however, made as an *"expressed requirement"* (to use the majority panel opinion's own characterization of the district court's ruling) of any defense by the employer to Ms. Ivey's claim that the employer prove precisely what the Supreme Court held in *Burdine* it did not have to prove, *i.e.*, that Ms. Ivey's replacement was as well qualified, or more qualified, than Ms. Ivey. *Burdine* reversed because of this erroneous standard of review; the majority opinion, even though it admits the district court did not follow the rule laid down unmistakeably by the Supreme Court in *Burdine*, affirms! In effect, the majority panel opinion simply refuses to follow *Burdine*.

And how does the majority panel opinion justify this disregard of the clear holdings of the Supreme Court in *Burdine*? It does so under "the clearly erroneous" rule. Yet, we have declared in repeated cases beginning with *Macmullen v. South Carolina Electric & Gas Company*, 312 F.2d 662, 670 (4th Cir. 1963), *cert. denied*, 373 U.S. 912, 83 S.Ct. 1302, 10 L.Ed.2d 143, and continuing with the cases cited by me in my panel dissent, and as the Supreme Court as well, has often declared that, when a trial court has used erroneous legal standards, its findings of fact are not to be reviewed under a "clearly erroneous" standard. The majority panel opinion does not, however, address this problem, nor give any reason why the established rule should not be followed in this case. I suggest that there can be no reason in this case to disregard the established rule.

Finally, it is difficult for me to understand how the majority panel opinion could, as it has, so completely disregard *Burdine*, a case the ink on which is hardly dry. If "clearly erroneous" were a sufficient excuse for disregarding the errors the Supreme Court found in the rulings in *Burdine*, the Supreme Court would have affirmed rather than reversed the decision in that case since the basis for applying the "clearly erroneous" rule could have been as justified in *Burdine* as in this case.

The point of my dissent on this phase of the petition for rehearing *en banc* is, to put it simply, no more and no less than that we should follow *Burdine* and that when we declare as the majority panel opinion herein does that the district court in its ruling "does not follow *Burdine*," our course is clear; we should reverse the findings in favor of the individual claims.

### Class Action

As a prologue to the class action feature of this case, a chronology of the steps in the litigation—something not done in either the majority or dissenting panel opinion—appears necessary.

This action was begun on May 5, 1976. The plaintiffs were Shirley Brown and Dorothy Black, suing on behalf of themselves individually and as class representatives. The individual complaint of both Brown and Black was an allegedly discriminatory discharge. On motion of the plaintiffs the district court granted conditional certification on March 3, 1977, in favor of a class of all blacks who since January 18, 1975, may have suffered discrimination "on the basis of race in connection with hiring, promotion, termination, job assignment, and geographical assignment." In addition, the order of certification provided for notice to all blacks who might have been employed by the defendant at any time after January 18, 1975, and who were within the class certified. The form of notice to be given was prescribed and emphasized the importance to every person receiving it to give careful attention to it since "[i]t affects your rights." (These words were in capital letters).

As a result of this order the required notice was mailed to all the more than 400 blacks who were then, or had been at any time after January 18, 1975, employed by the defendant at the designated operations. A small number of persons to whom the notice was directed replied. Those replying were less than 20. One of those who did respond by asserting a claim was Almetta Ivey. Her claim, as stated in her complaint filed with the EEOC, was that the defendant had discriminated against her by "(1) refusing to promote, (2) refusing to give me raises, and (3) demoting me from supervisor . . . ." She also had added a general allegation that the defendant "discriminate[d] against blacks and women by refusing to grant them fair promotions." Only one person out of the more than 400 employees queried responded to the notice with a claim of discrimination in promotion, *i.e.*, Janice Orr Mackey. She worked at one of the defendant's stores as a fountain employee "under the distributive education program until she was graduated from high school in May, 1976," when she quit "without giving any reason." In her case the district judge, after trial, found specifically:

"She was not denied a promotion to fountain manager because of her race but because she was still in school and unable to perform all the duties of the fountain manager."

*In essence, then, even though every black employee of the defendant subsequent to January 18, 1975—over 400 of them—was earnestly sought out and solicited as a claimant for discrimination in promotion, only one of such employees* made any contention that she had been denied a promotion because of her race (Janice Orr) and the district court found that this one claim was without merit. I repeat: Almetta Ivey had no such claim because actually she had been promoted; her claim was for demotion.

On April 20, 1978, the cause came on for trial before the court and on June 9, 1978, the district court filed its "Memorandum of Decision." In this "Memorandum of Decision," the district court said:

"Almetta Ivey did not file a separate charge of discrimination with the Equal Employment Opportunity Commission; she is not a plaintiff or intervenor in this suit. The court does not find that Ivey's demotion represents any general pattern, practice or policy regarding demotions. There is no evidence that Ivey or any other class member who held a supervisory position was given more onerous duties or was held to a higher standard of performance than whites in comparable positions. The court would like to hear further from the parties on whether Almetta Ivey is, on these facts, entitled to any relief, and, if so, what relief ought to be afforded."

The district court, also, in this "Memorandum of Decision" refined somewhat its class certification. First, it declared unequivocally that "[p]laintiffs have not established any general discriminatory pattern or policy as to discharges, layoffs, demotions, pay or working conditions." It did state that the "[p]laintiffs have established a *prima facie* case that Eckerd's discriminates in hiring, promoting or transferring class members into management and supervisory positions,

especially in the main office" and had discriminated in hiring in a few stores. *It did not find from the evidence, however, one single person who had suffered discrimination "in hiring, promoting, or transferring" or in being denied employment at any store of the defendant.* Its *prima facie* findings rested wholly on employment statistics which indicated, in the words of the district court, "that blacks [have been] hired [or promoted or transferred] in disproportionately low numbers." Such was the status of the class action when our opinion in *Hill v. Western Elec. Co., Inc.*, 596 F.2d 99 (4th Cir. 1979), *cert. denied*, 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 was filed on April 6, 1979.

As soon as counsel in the case became aware of *Hill* both moved into action. The defendant in mid-April moved to decertify the class in order to comply with the ruling in *Hill* and the plaintiff responded to *Hill* by filing a motion of intervention on behalf of Almetta Ivey. To her petition to intervene Ms. Ivey attached her proposed complaint, in which she described her claim as one for discriminatory demotion and asserted that "her demotion was a part of a racially discriminatory pattern or practice of 'hiring, transferring or promoting' in management positions." On July 26, 1979, the district court entered its order granting leave to the petitioner Ivey to intervene and finding that the petitioner was "a member of the class certified by the Court in its orders of March 3, 1977 and May 24, 1977" and that her claim was "typical of those of the class." The same day the district court amended its certification order to comply with its understanding of *Hill*. It thus decertified all "applicants for initial employment" at any of the stores of the defendant and all applicants for employment "in either management or supervisory positions," especially in the main office.

After this order there was no additional testimony taken and there remained only one class actually certified. This class consisted of those denied promotion. There was only one person who had appeared and

made a claim of discrimination in promotion and her claim had been dismissed. In short, then, we have a class certified but consisting of merely a single person who actually had been found to have no claim (Janice Orr Mackey). And this was the situation, even though every black employee of the defendant since January 18, 1975, had been sought as a complainant asserting promotion discrimination. But the district court, as well as plaintiff's counsel, predicated its class relief on the theory that, by allowing Ivey to intervene, a proper class representative had been identified—belatedly, it is true, since the intervention occurred more than a year after trial had been concluded—who could represent the class of minority employees denied promotion. The flaw in all this, though is that Ivey was not complaining that she was denied promotion: she had been promoted. Her complaint was that she had been "demoted" or "replaced" as a supervisor. But she is the sole basis upon which the whole class relief governing promotion practices of the defendant was grounded.[1]

If, however, we accept the district court's finding that Ivey had a claim of discrimination in promotion, it does not follow that there was an appropriate class of promotion discriminatees sufficiently numerous to support a class certification. If we count Janice Orr Machey and Ms. Ivey as possible promotion discriminatees, we have only two claimants of promotion discrimination—and this after an exhaustive effort to flush out others in the more than 400 blacks who had been or were employed at the installations in issue since January 18, 1975. That number is insufficient under all the cases to support a class certification.

Professor Arthur Miller in his monograph, "*An Overview of Federal Class Ac-*

tions: *Past, Present and Future*," Federal Judicial Center Education & Training Series, (2d Ed. 1977) at 22, stated the following guideline as distilled from an exhaustive review of the cases on the numerosity requirement under Rule 23, Fed.R.Civ. Proc.:

"If the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule and other factors, discussed below, become relevant."

Many of the decisions are more exacting than the guideline phrased by Professor Miller.[2] Thus, in *Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir. 1976), we held that a proposed class consisting of 55 employees did not qualify under the numerosity requirement of Rule 23. Without, however, attempting to identify any exact number as meeting the numerosity requirement, it is well settled that one or two will not meet the numerosity test. We held this in *Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699 (4th Cir. 1976).

The numerosity requirement is not established simply because there are a certain number of minority employees at work in a plant. There must be a showing of some kind that a sufficient number of those minority employees feel that they have been discriminated against by a denial of promotion in order to meet the numerosity requirement. This fact is illustrated by *McCoy v. McLeroy*, 348 F.Supp. 1034 (M.D. Ga.1972). Involved in that case was the right of non-resident college students at the University of Georgia to vote. The number of students at the University totalled 18,-000. There were, however, but two students who had claimed the desire to vote

---

1. It is not unfair to assume that plaintiffs' counsel rushed in, after *Hill*, with a petition for intervention by Ivey in order to provide a basis for retaining a claim of discrimination in promotion because he could find no actual claimant to discrimination in promotion among the plaintiffs in the existing or past labor force. He accordingly sought to identify Ivey, whose claim was one of demotion, not promotion, as a

proper and typical representative of those employees of the defendant who had suffered discrimination in receiving promotion.

2. For an exhaustive review of the decisions, *see* Connolly & Connolly, *Qualifying Title VII Class Action Discrimination Suits: A Defendant's Perspective*, 9 St. Mary's L.J. 181, 183–84, n. 11 (1977).

and been denied that right and there was no evidence that any other students had "attempted like individual plaintiffs to register and been refused." *Id.* at 1039. The court held that the numerosity requirement was not met. Again, in *Wright v. Stone Container Corporation*, 386 F.Supp. 890, 892 (E.D.Mo.), *aff'd*, 524 F.2d 1058 (1975), a discrimination case, it was held that the action might not proceed as a class action "for the reason that no showing had been made of the specific claims of a sufficient number of those purported to be class members, as required by Federal Rule of Civil Procedure 23(a), (1)(2), and (3)." And in a recent case from the Fifth Circuit, *Davis v. Roadway Exp., Inc.*, 621 F.2d 775, 776 (5th Cir. 1980), another discrimination case, the district court had initially granted class certification but, after notice, it had been "determined that only one of twenty three prospective class members indicated a desire to be a part of the class, whereas seventeen had specifically opted out and five had made no response whatever." The district court decertified the class certification because the "purported class lacked numerosity" and the Court of Appeals affirmed.

When, after all minority employees had been queried and only one asserted a claim of promotion discrimination (or two, if we assume that Ms. Ivey whose claim was discriminatory demotion is to be treated as a promotion discriminatee), what the district court should have done was what the court did in *Davis*: It should have decertified the class certification for employees claiming promotion discrimination. This would have eliminated any class action aspect of this case. The district court, however, did not do this. With but a single promotion discriminatee the district court proceeded as if there were a valid class action with proper numerosity and used it as a vehicle to impose on the employer overwhelming regulatory requirements in connection with its promotion of employees. And what makes the ruling even more incomprehensive, all this relief is ordered on the assumption that Ms. Ivey is a representative of a class of employees who have suffered promotion discrimination. Ms. Ivey's claim is not one for discrimination in promotion but one for discriminatory demotion. Her claim is not thus typical of employees who may have been discriminated against in promotion. And this is particularly so because the district court in its "Memorandum of Decision" found that such discrimination as it found Ms. Ivey had suffered did not "represent any general pattern, practice or policy." If hers was an isolated and personal act of discrimination, where is there a class of discriminatees of which she is typical? Certainly, *one* isolated case of discrimination in promotion or demotion (however Ivey's claim is described) which, by the court's own findings, doesn't represent a "pattern" or "practice" should not bring down on the employer's head the panoply of regulations suffered by this employer. And this should particularly be true where, as here, the court, after inviting all employees who might have a claim of discrimination in promotion to come forward, receives but a single meritless claim.

It may be just and appropriate to visit a bevy of regulations on a violator whose violations justify a finding of general practice or pattern but it is, I submit, a misuse of judicial power to impose a whole set of burdensome regulations on an employer who has not been found to follow any general practice of discrimination. In fact, in this case, there is not one single proven instance of a denial by this defendant of promotion to anyone, black, white or yellow, on account of his race. To smack such an employer with the array of requirements set forth in this judgment lends credence to the criticism directed at the federal district courts and courts of appeals by Professor Fried in his column in The New York Times of November 10, 1981. In this article Professor Fried said:

"Federal district judges are increasingly acting as day-to-day managers and implementors, reaching into the details of civil life . . . .

"As judges determine the size and content of municipal budgets, large-scale hiring practices, the management of public institutions, the courts no longer stand

merely as a veto on excessive government interference in citizens' lives; instead, they become yet another form of government management of those lives. Thus, what the late Lon Fuller, professor of law at Harvard, identified as the forms and limits of adjudication are being regularly violated. 'The least dangerous branch,' going beyond the role of nag or naysayer, has become considerably more dangerous.

. . . .

"But there is an alternative conception that views the common law as a more or less stable structure of private rights and relations. That conception does offer a significant constraint on judicial power, for the judge conceives of himself as discerning the application of that structure to changing circumstances. This conception of the common law has been caricatured under the rubrics 'formation' or 'conceptualism.' That no mere verbal formula can generate answers in changing circumstances is too easy to prove, but an underlying conception of private relations and the relation of the individual to the state can indeed generate answers in a deep and interesting way.

"These diagnoses suggest their remedies: Not the episodic, anti-constitutional—if not unconstitutional—withdrawal of jurisdiction from the Supreme Court in particular controversial matters, but the general shrinking of lower Federal court jurisdiction to direct the day-to-day business of government through managerial decrees. *Cutting class actions down to size is also in order, as these invite free-roaming, unfocused managerial decrees.* But the final remedy lies in a reaffirmation of an older, and I think nobler conception of the law.

"It is encouraging that the best recent writing in moral and legal philosophy has abandoned sophomoric cynicism about the objectivity of values. The ultimate solution lies in the accession of judges who believe that law is more than just a continuation of politics by other means." (Emphasis added)

I would reverse the class action findings of the district court and remand with direction to dismiss.